(19 App. Div. 285.)

### GEIBEL v. ELWELL.

(Supreme Court, Appellate Division, First Department. June 18, 1897.)

1. NEGLIGENCE—WHAT CONSTITUTES—INJURY TO MINOR.

In an action to recover damages for personal injuries, it appeared that the defendant's servants, in charge of a brig moored at a pier, in the course of having her hauled out by a tug, caused her head, with a heavy anchor hanging loose from the cathead, to swing in and over the pier, and, while the brig was moving along the pier with the anchor swinging over it, called on the plaintiff, a boy of 11, who was playing on the pier, to keep cast off one of the lines by which the brig was moored, while doing which he was struck by the anchor, and injured. *Held*, that these facts were sufficient to authorize the jury to find negligence on the defendant's part.

2. CONTRIBUTORY NEGLIGENCE.

It was error to determine, as matter of law, that the plaintiff, a boy of 11, inexperienced in similar places, and called upon suddenly, without warning of danger, to assist in casting off the rope, was guilty of contributory negligence in doing so, though, by looking behind him, he might have seen the approach of danger.

3. FELLOW SERVANTS—WHO ARE.

One who, at the request of the servants of another, voluntarily goes to their assistance in their work, without other relation with the master, and without expectation of pay, does not become their fellow servant.

Appeal from trial term.

Action by Conrad Geibel against James W. Elwell. From a judgment dismissing complaint, and from an order denying motion for a new trial, plaintiff appeals. Reversed.

The action is brought to recover damages for the loss of the plaintiff's right arm, by reason, as alleged, of the negligence and carelessness of the defendant on the 21st day of April, 1884. It appears from the testimony on the part of the plaintiff that the manner in which his injuries were received was as follows: On the day mentioned, the plaintiff, at the time 11 years old, and a number of other boys, were playing on the pier at the foot of East Fifth street, New York City, on the north side of which the brig Keystone, owned by the

defendant, was lying moored. The pier had 8 spiles along its north side, 60 feet apart, the eastern or outer spile being about 3 feet from the end of the pier; and there were lamp posts on the pier 100 feet apart. The brig was lying bow in, so that her port side was next to the pier, and her stern was 12 or 15 feet inside the end of the dock. From her port cathead an anchor weighing about 1,200 pounds was hanging by 3 or 4 feet of chain. The vessel was broad in the bow, and her catheads extended out, so that the anchor stock was hanging over the dock 2 or 3 feet. The plaintiff had never been on any other pier, and not very often upon that one. He had never done any work upon. docks or vessels, and did not observe how the anchor was hanging. The brig was fastened with a bow line leading to the fifth spile on the pier, a breast line with the bight around the fourth spile, and a stern line to the outer spile. Besides these, she had out spring lines. The bow and stern lines were nine-inch hawsers. A tugboat came to move the brig to the south side of the pier at Sixth street, and took a line from the starboard quarter. There were on the brig the captain, the acting mate, and another man. The mooring lines of the vessel were singled out to some extent, and the mate, who was forward, called to the boys playing on the dock to cast off the bow line from the fifth spile. A man who was in a shanty on the dock heard this request of the mate, came out, and reproved him for making it, and drove the boys away, telling them they would get hurt there. The man cast off the bow line, and one of the boys threw off the breast line. The boys then went to play about a pile of lumber on the south side of the dock. After the bow and breast lines were cast off, the brig began to move out, and the mate was called aft by the captain. The flood tide was running, and the vessel's stern swung off from the pier, and her bow swung in so that her head rigging was over the pier. The mate called or beckoned to the boys again to cast off from the outer spile the stern line, which he was paying out as the vessel moved out of the dock. A number of the boys, the plaintiff among them, responded, and, after lifting the bight of a line off a cleat on the dock next west of the east spile, began to lift the nine-inch hawser off the spile. The top of the spile was higher than the plaintiff's head, so that, to get the hawser off, he had to extend his arms upward. As he was so engaged, he was facing the river, and his back was towards the bow of the vessel. After the vessel began to move, with her bow in over the pier, the anchor stock struck a lamp post, twisted the top of it off, and bent down the other part, and then, swinging by its three or four feet of chain, with the rapid movement of the vessel, raked along, its flukes digging and scratching the sides of the pier, until the stock struck the outer spile, just at the moment that the plaintiff, with the assistance of some of the other boys, had succeeded in lifting the hawser off. In striking the spile, the anchor stock crushed the plaintiff's right arm, as it was extended upward, against the spile. The anchor then swung clear, and the vessel went out into the river, and was taken in to the Sixth street pier by the tug. The boy was taken to the hospital, and his arm amputated. The plaintiff also introduced the testimony of shipmasters, tending to show that the manner of towing the vessel out of the dock, by casting off all lines but the stern line, was unusual and unseamanlike, and that the anchor, when hanging at the cathead, should have been stopped up short, and not have had three or four feet of chain by which to swing. At the close of the plaintiff's case, on motion of the defendant's counsel, the court dismissed the complaint, to which ruling the plaintiff excepted, and moved for a new trial, which was denied; and, from the judgment and order thereupon entered, the plaintiff appeals.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ;

Christopher Fine, for appellant.

R. D. Benedict, for respondent.

O'BRIEN, J.    The learned trial judge stated that he would assume that there was negligence in the management of the brig by those in charge of her at the time of the accident; but, in granting the motion to dismiss the complaint, he concluded, as matter of law, that the plain-

tiff was guilty of contributory negligence, and that those in charge of the brig were fellow servants of the plaintiff, and that for their negligence, as against the master, he could not recover.     In determining whether the disposition thus made was correct, the plaintiff, under the well-settled rule, is entitled to the most favorable inferences and deductions that can be drawn from the testimony and proofs.     Upon the question of defendant's liability, there was sufficient evidence to justify the inference that, through his servants, he had created a dangerous situation into which plaintiff was induced to enter.     Without repeating all such evidence, it clearly appears that those on the brig made no provision, before she was moved, or while she was in the act of moving, to have any one upon the pier who could release the lines or hawsers; and that the manner of casting off the hawsers was such that, instead of the brig being under the control either of the men on board of her or the tug, which was engaged in pulling her out from the pier, and up stream, her stern was pulled around, permitting her bow to swing in against the pier, so that an anchor weighing about 1,200 pounds, which was swaying and dangling from three to four feet below the cathead, and reaching over the pier, hit the spiles, breaking a lamp post, and scratching the dock, and taking off the arm of the plaintiff, while he, with other boys, was engaged, at the request of those on board the brig, in the very act of casting off the stern line. There was evidence, therefore, from which the jury could have inferred that, by the management of the brig, those on board of her had created a dangerous situation, which was perilous to all upon the pier who, without notice or knowledge of such danger, might be reached by the anchor and the rigging pendent about the bow of the swinging brig. It was for the jury further to determine whether it was dangerous for a child of 11 years (which was the age of the plaintiff) to undertake to cast off from a spile at the end of the pier, and within the line of movement of the bow and swaying anchor, a nine-inch hawser, which connected the stern of the brig to the pier.     If such was dangerous work for the plaintiff to engage in, it was evidence from which negligence could be inferred on the part of those who invited or induced the plaintiff to enter upon the danger, without warning, and rendered liable for the injuries sustained by the child those responsible for placing him in such position.     When the brig commenced to swing stern out, with the bow over the pier, it became necessary to release the stern line; and thus it was fairly to be inferred that a dangerous emergency was present, requiring the assistance of some one on the pier to extricate the brig by loosing the stern line from the spile.     It was in such an emergency, according to the plaintiff's testimony, that he was requested to undertake for the defendant, and for the protection of the defendant's property in the emergency thus existing, this dangerous work.

We do not think it will be seriously questioned that the defendant was liable for actions of the three employés in charge of the brig, who were at the time managing it in his business and for his benefit. Indeed, the emergency made the act of the mate, or of the person who induced the plaintiff and the other boys to undertake the task, the act of the defendant.     As there was, therefore, evidence from which the

jury might infer that the dangerous situation created by the manage-
ment of the brig was due to the defendant's employés, and that the
plaintiff was invited to enter upon a dangerous work in an emergency,
without warning him of the danger, or instructing him as to how it
could be avoided, then, for injuries received while engaged in such
work, the defendant might be held liable, unless the plaintiff con-
tributed by his own negligence to the accident from which his injuries
flowed.   If there was a question of fact as to whether the plaintiff
was or was not guilty of contributory negligence, then it was improper
to take that from the jury.   The respondent, however, in upholding
the ruling made by the trial judge, insists that the plaintiff, as matter
of law, was guilty of contributory negligence.   In support of this
contention, he urges that the accident happened in broad daylight,
and that the position of the vessel and her anchor was open and appar-
ent to anybody who came upon the wharf; that the plaintiff saw her
as he went on the wharf, and he was old enough to know that a mov-
ing anchor would hurt him if it struck him, and that he must keep out
of the way; and that when, some time before the accident, he was
called upon to cast off the brig's bow line, he was told by a man on the
dock to go away, that he would get hurt there.   As to this latter testi-
mony, the plaintiff denies having heard such warning; but, even if
he did, he was not injured at that time, for, as the testimony shows,
he, with the other boys, went to another part of the pier, and was there
engaged in play; and it was some time afterwards that, the dangerous
emergency to which we have alluded having arisen, being suddenly
called upon, he undertook to comply with the request of the mate or
those on board the brig to throw off the stern line.   There is nothing
to show that the plaintiff knew there was any danger in complying
with the request; but the testimony is that he had never before done
such work; that he had not observed the position of the anchor; and
that he had never before been on any pier or dock, except this one on
which he was hurt, and only a few times on that.   We have, more-
over, the evidence that scarcely any time elapsed between the request
to remove the stern line and the crushing of the plaintiff's arm; that
he did not see the anchor until it struck him; and that in running to
the spile at the east end of the pier, and in casting off the stern line
therefrom, his back was necessarily towards the bow of the brig and
the anchor.   Having no knowledge, therefore, about the movements
of vessels, as to their proper or improper handling, or as to whether
the casting off of a line was right or wrong, or whether it was danger-
ous, these should not all, as matters of law, be determined against the
plaintiff, who, so far as his testimony shows, without any notice or
warning of danger or risk, ran on being requested to remove a line, in
the act of removing which he received his injuries.   Nor do we think
there is any force in the suggestion that he should have looked, and,
if he had, that he would have seen the anchor was coming along over
the pier, because, according to one of the witnesses, there was but the
briefest space of time between the call to remove the hawser, which
was responded to by the plaintiff and the other boys, and the time
when the anchor struck the spile, and crushed the plaintiff's arm.   As
expressed by the witness, the anchor came against the spile with a

rapidity like "the click of a watch." We think, therefore, that the question of the plaintiff's contributory negligence was one of fact, and should not have been determined as a matter of law, because he was entitled to the benefit of the rule, which is sustained by many cases, that "if the plaintiff is suddenly put into peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions or making an unwise choice under this distracting influence, although, if his mind had been clear, he ought to have done otherwise, especially if his peril is caused by the defendant's fault." 1 Shear. & R. Neg. § 89. "A party who places another in peril cannot complain if he does not exercise the best judgment in extricating himself from such peril." Voak v. Railway Co., 75 N. Y. 323.

We also regard as without force the argument that any negligence shown as against the master of the brig was that of fellow servants of the plaintiff, and that the complaint was rightly dismissed on that ground, because we can think of no legal principle that can be invoked which would make a boy like this plaintiff, who never had any relation with the master or his employés beyond going to their assistance in an emergency, a fellow servant of those who created the emergency. There certainly was no express hiring, and the mere gratuitous rendering of such a service did not impliedly create, as between the plaintiff and those on the brig, the relation of fellow servants. As we think it was error, therefore, for the learned trial judge to so hold, and to determine, as matter of law, that the plaintiff was guilty of contributory negligence, it follows that there should be a new trial.

The judgment is accordingly reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.