RYAN v. PHIPPS.

(Supreme Court, Appellate Division, First Department.   November 3, 1911.)

1. MASTER AND SERVANT (§ 88*)—INJURY—RELATION OF PARTIES—VOLUNTEER.
    Defendant's house in New York, in charge of a housemaid, having been closed for the summer, he sent a maid with his baggage to open the house and unpack. She arrived in the evening, and entered the inclosure through a door customarily used by servants. The night watchman accompanied her, and rang the bell at the servants' door. The bell was not answered by the housemaid, whereupon the night watchman, who was employed only to watch the outside of the place at night, went for plaintiff, who had been cleaning in the house by the day, and asked whether she knew the whereabouts of the housemaid and whether she had a key. Plaintiff informed him that in cleaning the windows she had not locked them, and that he might effect an entrance that way. Plaintiff accompanied the night watchman to the house to show him a window that was open, and as they entered the inclosure through another gateway plaintiff stumbled on a board across the gateway, designed to prevent the gate being forced in, and was injured. Held, that plaintiff was a mere volunteer, as to whom defendant owed no duty.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–152; Dec. Dig. § 88.*]

2. MASTER AND SERVANT (§ 196*)—INJURIES TO SERVANT—FELLOW SERVANTS.
    Even if plaintiff owed a duty to defendant, by virtue of her employment in his service, to assist in effecting an entrance for the maid, she and the night watchman were fellow servants, and hence she could not recover for his negligence in failing to warn her of the board.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 486–488; Dec. Dig. § 196.*]

3. MASTER AND SERVANT (§ 88*)—PERSON ASSISTING SERVANT—INJURIES—
　　EMERGENCY.
　　　Such facts were insufficient to show an emergency, so as to entitle
　　plaintiff to recover under the rule that a master is liable for the negli-
　　gence of a servant or another called to his assistance in an emergency.
　　　[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
　　144–152; Dec. Dig. § 88.*]

Appeal from Trial Term, New York County.

Action by Annie M. Ryan against Henry Phipps. From a judgment
for plaintiff, and from an order denying a new trial, defendant ap-
peals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT,
MILLER, and DOWLING, JJ.

John Vernou Bouvier, Jr. (Edward F. Lindsay, on the brief), for
appellant.

Charles Steckler (Levin L. Brown, on the brief), for respondent.

LAUGHLIN, J. The plaintiff has recovered a judgment for per-
sonal injuries on the theory that they were caused by the negligence
of the defendant. The defendant owned the private residence situate
at the northeast corner of Fifth avenue and Eighty-Seventh street,
in the borough of Manhattan, New York. The accident occurred at
about 7:30 o'clock on the evening of the 29th day of September, 1908.
At this time the house had been closed for the summer, and the de-
fendant and his family were at Lenox, Mass. He had left a house-
maid in charge of the house, and employed a night watchman to pro-
tect the outside of the building and prevent trespassing between the
hours of 7 o'clock in the evening and 7 o'clock in the morning. The
night watchman had no duty to perform in the interior of the building,
and had no key with which to enter it. The yard between the house
and the street was inclosed on the lines of each street by a marble
wall covered with boards. On Eighty-Seventh street, some distance
easterly, there was an opening in the wall from 8 to 14 feet in width—
both widths are given in the testimony—forming the main entrance to
the house. At the time in question it would seem that the permanent
gate had not been placed in this entrance. On either side was a high
column, and the opening between them was boarded up about 8 feet
in height, with a door for pedestrians, which was kept locked, and
to which the night watchman had a key. Easterly of this entrance,
there was another entrance to the garage, with a large door at the
street line, within which was a smaller door, which was used by trades-
people and the servants.

[1] The defendant and his family determined to return to New
York and occupy the house on the evening of September 29, 1908. A
maid was sent on ahead with the baggage to open the house and un-
pack. She arrived, shortly after 7 o'clock probably, although she tes-
tified that it was 8:20, and she entered the premises through the door
customarily used by tradespeople and servants. The night watchman
saw her as she arrived, and accompanied her and rang the bell to the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

servants' door for her. The bell was not answered by the housemaid, who, however, was in for some 20 minutes. The accident happened on Tuesday. On that day and several days before plaintiff had been working in the house, sweeping and cleaning. She was hired by the day, and received $1.50 per day; but it does not appear by whom she was hired or paid. She had been paid for two days' work, but her work was not finished, and she had been employed to return and resume it the following morning. On receiving no answer to the bell, the night watchman, without any request or suggestion by the maid, went across the way, according to his testimony, to interview the plaintiff, who lived in an apartment at Nos. 16 and 18 East Eighty-Seventh street, with a view to ascertaining whether or not the housemaid in charge of the house was in, as he knew that plaintiff had left there at 6 o'clock and would likely know. The plaintiff testified that he informed her that one of the maids had arrived, and that the family were to arrive shortly, and asked whether she knew where the housemaid in charge of the house was, and whether she had a key; that she informed him that the housemaid had been ill all day, but that in cleaning the windows that day she had opened them, and on shutting them did not lock them, and that perhaps he could get in that way, whereupon he requested her to accompany and show him; that she accompanied him, and they entered through the servants' entrance, and after conversing with the maid, who had arrived to open the house, and an engineer who was with her, the night watchman requested her to "come along quick" and show him "the window"; that it was very dark, and she followed him out onto the street the way they entered, and to the door of the main gateway which opened outward toward the street; that the night watchman pulled the door open, and she thereupon started to walk in, and stumbled on a board, which she did not know was there, as she had never entered that way before, and fell, sustaining the injuries for which she seeks to recover damages; and that the night watchman said nothing to her when he opened the door. The board, on which the plaintiff tripped or stumbled, extended edgewise across the gateway, and its top was about 9 inches above the walk. It was designed to prevent the gate being forced in. The night watchman denied that he requested the plaintiff to accompany him and show him the window, which had been left unlocked. He claims that she followed him, and overtook him on his arrival at the Phipps mansion, and then informed him about the opening of the window, and that he unlocked the door, or gate, with a view to entering, not to obtain access to the house, but to close any window found opened, and that without any invitation from him, or knowledge on his part that she was to do so, the plaintiff immediately entered as the gate swung open. In the view we take of the case, it may be assumed that the jury believed the testimony of the plaintiff, instead of that of the watchman.

[2] Accepting the testimony of the plaintiff as to the purpose for which the gate was opened, then, on the uncontroverted evidence, the night watchman was not engaged in the performance of any duty which he owed to the defendant, which authorized him, as represent-

ing the defendant, to call the plaintiff to his aid, and would render the defendant liable for any act of negligence on his part. The only negligence charged is the failure on the part of the night watchman to inform the plaintiff of the location of this board, and to warn her of the danger of tripping or stumbling over it. There was no negligent construction by defendant, and no personal negligence on his part. He had sent no word to the night watchman by the maid, either enlarging or changing his duties, and she did not ask him to assist her. At most, he was a volunteer in aiding the maid to obtain access to the house, as was also the plaintiff; for any act on her part with respect to aiding the maid or the night watchman in obtaining access to the house was not within the scope of her employment, and likewise had not even been requested by the maid. She may have acted upon the theory that she owed the duty to the defendant by virtue of her employment in his service; but, if this were correct, she would be coservant with the night watchman, and could not recover for his negligence. Erjauschek v. Kramer, 141 App. Div. 545, 126 N. Y. Supp. 289.

[3] There are cases in the books in which an employer has been held liable for the negligence of an employé toward another called to his assistance in an emergency (Geibel v. Elwell, 19 App. Div. 285, 46 N. Y. Supp. 76; but see Cannon v. Fargo, 138 App. Div. 20, 122 N. Y. Supp. 576); but we know of no principle of law, or precedent, for holding a master liable for the negligence of one volunteering services to an employé, by which another, likewise volunteering services, sustains injury. Here there was no emergency. The housemaid was in the house, and she opened the door within about 20 minutes, and defendant had not even left his property in a negligent or dangerous condition. We do not deem it necessary to analyze the authorities cited, for we deem them all plainly distinguishable from the case at bar on the facts. We express no opinion on the question as to whether or not the acts and omissions of the night watchman would constitute negligence, if defendant were liable therefor.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.