THIRD DEPARTMENT, DECEMBER, 1919.

Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim for Compensation under the Workmen's Compensation Law, Made by MARY L. FARRINGTON, Widow, Respondent, on Behalf of JOHN FARRINGTON, Deceased, v. UNITED STATES RAILROAD ADMINISTRATION, WALKER D. HINES, Director General of Railroads; LONG ISLAND RAILROAD, Appellant.

Award affirmed. All concur, except H. T. Kellogg, J., dissenting, with a memorandum.

H. T. KELLOGG, J. (dissenting): Two laborers, of whom John Farrington was one, were engaged in unloading screenings, for an employer named Burns, from a car standing on the tracks of the Long Island railroad. They finished their work at about four P. M., and boarded a motor truck of their employer to return to their homes. The station agent of the Long Island railroad, together with a helper, was then making an effort to close one of the doors of a box car standing near by. The agent called out to the men on the truck, " Come on, fellows, give me a hand to close this door," or, as stated by the agent, " Will one of you men please give us a hand in closing this door." Both men went over to help move the door, which in closing caught the hand of Farrington and clipped off the end of his finger, with the result that infection

set in and he subsequently died of the disease of tetanus. Upon a claim filed by the widow of Farrington an award was made against the Director General, based upon findings of the Industrial Commission that Farrington came to his death through an accident occurring out of and while he was in the course of employment by the Long Island railroad. The theory of the award seems to have been that while Farrington was in the general employ of Burns he was at the moment of the accident temporarily in the special employ of the Long Island railroad. None of the cases dealing with the coexistence of a general and a special employment have the slightest application to the facts of this case. Farrington was not loaned by Burns to the railroad for a special purpose, or directed by any representative of Burns to go to the help of the agent. No offer of pay was held out to him or his employer, nor did he become, through the orders of his employer or by any act of his own, subject to the directions and control of the railroad agent. The agent testified that he had no authority to employ labor, and particularly to employ the two men whose help he asked. These men had finished their work and were about to go home on their employer's truck when they were called upon to do a friendly act requiring the exertion of their strength for but a moment of time. To call their acts those of a new employment rather than acts of kindness gratuitously performed is to supply a mercenary motive where the proven facts indicated that none existed. In *Geibel* v. *Elwell* (19 App. Div. 285) a small boy standing on a pier was asked to throw off the hawser of a departing vessel, and was injured in consequence. It was said in that case: " There certainly was no express hiring, and the mere gratuitous rendering of such a service did not impliedly create, as between the plaintiff and those on the brig, the relation of fellow-servants." The deceased was not an employee of the Long Island railroad, and the award should not have been granted. The award should be reversed.