PETER LIPARI, an Infant, by SALVATOR LIPARI, His Guardian ad Litem, Respondent, *v.* THE BUSH TERMINAL COMPANY, Appellant.

Second Department, July 27, 1920.

Master and servant — negligence — action for injuries received while helping driver of truck to unload — volunteer — question for jury — emergency authorizing driver to engage help — failure to warn plaintiff, a boy, of dangerous character of work — fellow-servant rule not applicable.

In an action to recover for injuries received by the plaintiff, which were caused by a box falling on him from defendant's motor truck while the same was being unloaded, it appeared that the plaintiff, who was not in the employ of the defendant, accompanied the driver of the truck and assisted at one stop in helping to unload some small packages; that there were two heavy cases on the rear of the truck which were held in place by a rope fastened to the stanchions of the truck; that it was necessary to hold one of the boxes in place while the driver released the rope and let the other slide to the ground; that the driver called on an expressman to assist his helper to hold the second box in place and, as contended by the plaintiff, called on him to help the other two.

*Held*, on all the evidence, that a question of fact was presented as to whether the plaintiff was a mere volunteer or was complying with the request of defendant's employees for assistance.

The evidence shows that the necessity for outside assistance in unloading the truck should have been apparent to the defendant when it sent the truck out and that at the time of the accident an emergency existed which justified the defendant's servant in employing the plaintiff to assist in unloading the box, and, therefore, the act of the driver in asking plaintiff to help was the act of the defendant.

The work which the defendant's driver called on the plaintiff to perform was dangerous and it was negligence for the defendant through its driver not to instruct the plaintiff or warn him as to the dangerous character of the work he was called on to perform.

Under the facts of the case the fellow-servant rule has no application

PUTNAM, J., and JENKS, P. J., dissent.

APPEAL by the defendant, The Bush Terminal Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 20th day of February, 1920, upon the verdict of a jury for $2,500, and also from an order entered in said clerk's office on the 18th day of February, 1920, denying defendant's motion for a new trial made upon the minutes.

*Alfred W. Meldon* [*Joseph Force Crater* with him on the brief], for the appellant.

*Patrick E. Callahan,* for the respondent.

KELLY, J.:

On April 3, 1917, the defendant's five-and-one-half-ton open automobile truck, fully loaded with merchandise, went from Brooklyn to Manhattan to make deliveries. Before leaving Brooklyn two cases were loaded on the tail end of the truck, swinging on the back. Each case weighed 820 pounds; they were loaded side by side, with a space of a couple of inches between them. As loaded, each case projected half its width out over the end of the floor of the truck, and they were held in place by a rope extending across the back of the cases and fastened to stanchions on each side of the truck.

The truck, fully loaded, was in charge of a driver or chauffeur, one Schwartz, twenty-one years of age, and a helper, Vaughan, sixteen years of age. The plaintiff, a schoolboy, was fourteen

years and five months old. The helper, who was a former schoolmate of the plaintiff, invited him to ride on the truck, and the two sat on top of the load as the truck proceeded from Brooklyn to Manhattan. At some point in Church street, Manhattan, the truck stopped to make deliveries. The helper got off and at his request the plaintiff handed down two packages containing silk for delivery. The chauffeur saw him assisting the helper at that time, and the truck proceeded to White street to make delivery of the two cases swinging on the end. Arriving in White street, it was backed into an alley alongside the building in which the deliveries were to be made until it reached a point opposite an elevator. It was stopped alongside the curb. The plaintiff testified that the helper alighted, also the chauffeur or driver, and that the driver started to loosen the rope which held the two heavy cases in place. To do this he stood on the left side of the truck as it faced forward. As the boxes hung out over the end of the truck they were three feet ten inches above the surface of the street. The method of unloading was to let the cases slip off the end of the truck and let them slide down or drop to the ground. The cases contained cotton goods. The driver, gradually loosening the rope on the left side, could manipulate the case on that side, but obviously when the rope was entirely removed, and the left-hand case off the truck, there would be no support for the right-hand case. It was necessary to hold the right-hand case in place. The driver says he didn't want it to fall off because it would break all in pieces. It looked to him as if it might fall off when the rope came out. So the driver told the sixteen-year-old helper to hold the right-hand case, and he also asked the driver of an express wagon, one Halter, to assist him. He says it is customary to call upon other expressmen at times for aid. The helper and the expressman got behind the right-hand case, each pushing against it to enable the driver to loosen the rope. It was a heavy case and the expressman testifies that it required his strength to hold it in place. The helper, or " tail boy," as the driver calls him, says he was only able to reach up three or four feet above the floor of the truck. The plaintiff says that the driver called to him to come down and give the helper a hand with the case. Plaintiff testifies that he started to

Second Department, July, 1920.          [Vol. 193.

climb down to the ground, and as he was doing so the helper, who was standing on the ground pushing against the right-hand case as the truck faced forward, called to him to " Hurry up," whereupon he jumped to the ground on the right-hand side and ran around to help him. He found the expressman assisting the helper to hold up the case. The plaintiff went between the two men and placed both hands against the case in his effort to assist them, the chauffeur loosening the rope from the stanchion on the opposite side of the truck. Plaintiff says he had barely put his hands on the case when it came down off the truck, crushing the plaintiff under it and inflicting severe injuries for which he has recovered the judgment appealed from. The helper and the expressman on the sides of the case stepped out of the way. They both say that they did not see the boy standing between the two and assisting them, but when the case went down the fourteen-year-old plaintiff was under it; the helper testifying that he didn't see the boy as he (the helper) had run right alongside the express driver when it was falling, " and I stepped back, and it seems that Lipari [the plaintiff] went in front of me to hold the case." He does not know whether plaintiff reached the case or not. The plaintiff, who was a trifle shorter than the " tail boy " or helper, could only reach two feet above the truck floor as he stood with his two arms extended as far as he could reach pushing against the box. One Ismach, a shipping clerk employed in the building at which the case was delivered, testified for the plaintiff that he was coming through the alley in which the truck stood and saw the plaintiff coming around the truck to get hold of the case. He heard Schwartz, the driver, say to the small boy, the plaintiff, " Go ahead and get ahold on the case." He passed the truck, heard a crash and saw the case on the walk and the boy underneath the case. He says as he was passing the truck when the chauffeur spoke to the boy, the boy was jumping from the truck and went to the rear of the truck from the left-hand side. He just left the truck and went around, he was standing right on the side when he told him, and he went around the rear end of the truck.

The chauffeur, who was in the employ of defendant at the time of the trial, denies that he asked the plaintiff to assist

the helper. He says that he does not know how it happened; that the helper and the expressman ran away and the case came down on the boy. He says he saw the plaintiff on the sidewalk alongside of the truck; he didn't see him go towards the truck or case. The helper, who was not in defendant's employ at the time of the trial, testified for defendant that he did not ask the boy to help him. Questioned, " Did he [the driver] ask the boy? " he replied, " I couldn't say, I know I didn't hear him."

The learned trial justice having denied motions to dismiss the complaint, submitted the question of defendant's negligence to the jury. He told them that if the plaintiff without invitation volunteered to assist in unloading the box, he could not recover. He asked them to say: *First.* Whether there was an emergency which justified the driver in asking assistance? *Second.* Was the boy asked to help? *Third.* Was the work dangerous for a boy to engage in? *Fourth.* Was any warning or advice given to the boy as to avoiding the danger? The learned judge told the jury that the plaintiff must prove these four essentials to entitle him to recover. If he failed in any of them defendant was entitled to a verdict. He also submitted to them the question whether the boy himself was guilty of contributory negligence, because, he said: " If it was a dangerous situation, and acting as a reasonably careful boy he knew it, and without any consideration or regard for the danger went into it, then he would be guilty of contributory negligence, and he could not recover." At the request of the defendant he charged that " the implied authority to the driver, if any, [*i. e.*, to ask assistance] only extended to the reasonable use of such authority." He refused to charge that if the driver had implied authority to call upon any one to assist him, such person then became a fellow-servant, and if the accident was the result of the act of the chauffeur or helper in a detail of the work, the defendant was not responsible.

The learned counsel for the appellant argues that the court erred in the refusal of this last request, citing cases in which it has been held that an emergency employee becomes a fellow-servant and cannot recover when the injury is caused by the carelessness of his companions in the method in which they carry out their work. (*Cannon* v. *Fargo,* 138 App. Div. 20;

*Fiesel* v. *New York Edison Co.*, 123 id. 676.) The appellant also urges that there was no evidence that an emergency existed justifying the driver in asking assistance, and that there was no evidence that the work was dangerous or that there was necessity to warn or instruct plaintiff, and he claims that the verdict of the jury was against the evidence. He says: " The law demands proof and not surmises. The cause of the accident was a complete mystery and the jury had no right to guess at its cause."

I am unable to agree with the appellant. Upon the basic question whether the fourteen-year-old plaintiff was a mere volunteer, or was complying with the request of defendant's employees for assistance, a clear question of fact was presented. The plaintiff and his witness Ismach testified that the driver called to the plaintiff to assist the helper. The driver, an employee of defendant, denied it; the helper when asked the direct question answered, " I couldn't say, I know I didn't hear him." As to the existence of an emergency, the defendant dispatched this loaded five-ton automobile truck to Manhattan in charge of a twenty-one-year-old driver and a sixteen-year-old helper. If we consider only the particular freight in the accident, the two cases each weighing 820 pounds overhanging the tail end of the truck and kept in place by the rope, could not be unloaded without the gradual loosening of the rope on one side of the truck, permitting the case on that side to slide off the end to the ground. The manipulation of the rope and the unloading of the 820-pound case certainly occupied the attention of at least one of defendant's servants. But with the removal of the rope and the case on the side where the rope was released, the remaining case would fall to the ground and break all in pieces unless supported. The driver managing the rope and the first case, there was only the sixteen-year-old helper to prevent the second case from falling. The driver concedes the necessity for help; he admits that he called for help from the expressman. The unloading of the truck was defendant's work. It would appear that the necessity for outside assistance in unloading should have been apparent to the defendant when it sent out the truck. Indeed, the driver testified that it was customary to call for assistance. In *Marks* v. *Rochester Railway Co.* (146 N. Y. 181, 190) Chief

Judge ANDREWS, writing for the court, says: " The conduct of the driver indicates that, in his opinion, assistance was necessary, and the jury might reasonably have reached the conclusion upon the evidence before them, in the absence of any contradictory evidence, that there was an emergency which gave to the driver authority to call in outside aid on the occasion. The authority of a servant is not in all cases confined to the rendering of personal service. In every business and employment there are exigencies which are not anticipated and which require a servant to act, in the absence of the principal, for the immediate protection of his interests, and he may do things in his interest when the emergency arises which transcend his usual authority, and they will be deemed to have been authorized." And again, the chief judge says: " If his employment in this service directly by the principal would have been an act of negligence, his employment by the driver, acting for the time being in place of the master, was a negligent act imputable to the defendant. * * * If the service required of the plaintiff was a dangerous one for a boy of his age, from which personal injury to him might reasonably have been anticipated, the defendant might justly be chargeable if injury happened which was the natural consequence of the employment."

Upon the facts as found by the jury, the act of the driver in employing the boy to assist in unloading this heavy case of merchandise was the act of the defendant. That the work was dangerous need hardly be discussed. This heavy case, extending out over the back of the truck with its support removed, must fall unless supported, and the friendly expressman and the two boys, the helper and the plaintiff, were obviously in a dangerous situation in their endeavor to hold it up. No skids or other appliances were provided or used, so far as appears from the evidence. If the principal were present, aside from the inherent danger of the work and the impropriety of engaging a fourteen-year-old boy in such work, he might well be held to the duty of warning or instructing him in some way. *Geibel* v. *Elwell* (19 App. Div. 285) was a case where the mate of a vessel called to boys playing on the dock to cast off a mooring line, and when the plaintiff, eleven years of age, was endeavoring to lift the hawser from a spile,

the bow of the vessel swung by force of the tide, causing the anchor to crush the arm of the boy. In reversing a judgment of nonsuit Mr. Justice O'BRIEN, writing for the court in the First Department, said: " It was for the jury further to determine whether it was dangerous for a child of eleven years, which was the age of the plaintiff, to undertake to cast off from a spile at the end of the pier, and within the line of movement of the bow and swaying anchor, a nine-inch hawser which connected the stern of the brig to the pier. If such was dangerous work for the plaintiff to engage in, it was evidence from which negligence could be inferred on the part of those who invited or induced the plaintiff to enter upon the danger without warning, and rendered liable for the injuries sustained by the child those responsible for placing him in such position." The learned counsel for the appellant questions the authority of this case and says it was summarily disregarded in *Cannon* v. *Fargo* (*supra*), but I cannot find that the reasoning of the court applicable to the case at bar has ever been questioned. In *Cannon* v. *Fargo* (*supra*) the plaintiff, a man of mature years, claimed to be an emergency employee, and it was held that he was injured in the course of the work by the negligence of his fellow-servants and was barred from recovery, but the court said of *Geibel* v. *Elwell*, through Mr. Justice CARR: " It should be noted * * * that the portion of the opinion just quoted was not necessary to the decision, because that court had also held that, if the position in which the boy was placed was one of inherent danger of which the boy was ignorant, it would have been negligence to have put him there without a warning, and such questions were for the jury, whether the lad was an ' emergency employee ' or not, for this was a part of the master's duty to a lad of tender years and no experience."

In the case at bar the negligence charged against the defendant and found by the jury is the placing of this fourteen-year-old boy as an emergency employee in a highly dangerous position without warning, with the direct result that he sustained the injuries complained of, not so much because of any direct carelessness on the part of the sixteen-year-old helper and the expressman called in to hold up the falling case of goods, but because of the inherent danger of the

work at which the boy was placed, due to insufficient force to properly unload the truck. I do not think the fellow-servant rule has any application to the facts here.

The judgment and order should be affirmed, with costs.

RICH and BLACKMAR, JJ., concur; PUTNAM, J., dissents on the ground of error in the refusal to charge at folio 397 regarding plaintiff as a fellow-servant, with whom JENKS, P. J., concurs.

Judgment and order affirmed, with costs.