JOSEPH MANIFOLD, Appellant, *v.* UNITED STATES TRUCKING COR-
PORATION, INC., and Another, Respondents.

Second Department, June 2, 1924.

Negligence — action to recover for injuries suffered while plaintiff was helping, temporarily, employee of defendant corporation to load 1,600-pound case on truck — defendant corporation is independent contractor — individual defendant who hired corporation to move case not liable — evidence raises issue as to whether plaintiff was emergency employee, whether driver of truck undertook to load same with insufficient help and whether that caused accident, and as to assumption of risk and contributory negligence.

In an action to recover damages suffered by the plaintiff while he was helping the driver of a truck belonging to the defendant corporation to load a 1,600-pound case thereon, it appeared that the individual defendant, the owner of the case, engaged the defendant corporation to move the case from a dock; that the driver of the truck received directions from the individual defendant and proceeded to the dock for the case; that the plaintiff, who is a sailor and was working on a boat just before the accident, claims that as he was going to lunch, the driver of the truck asked him to help load the case, while the defendant gave evidence to show that the driver engaged loaders and that the plaintiff was asked by one of the loaders to assist them in loading the case; that six men tried to lift the case onto the truck but failed and the case tipped over onto the plaintiff.

*Held*, that the corporation defendant was an independent contractor in the work of moving the case for the individual defendant and that the court properly dismissed the complaint as to the individual defendant and the judgment dismissing the complaint as to him should be affirmed, but inasmuch as he did not appear or argue the appeal or file points, the affirmance is without costs;

That the evidence presented questions for the jury as to whether or not the plaintiff was an emergency employee of the defendant corporation, whether the driver of the truck undertook to load the case with insufficient help, the evidence tending to show that six men were not sufficient to lift the case, and whether that caused the accident and whether the plaintiff assumed the risk or was himself guilty of contributory negligence, and it was error, therefore, for the court to dismiss the complaint as to the corporation defendant.

APPEAL by the plaintiff, Joseph Manifold, from two separate judgments, the first, in favor of the defendant Collins, entered in the office of the clerk of the county of Kings on the 19th day of May, 1922, and the second, in favor of the defendant United States Trucking Corporation, Inc., entered in said clerk's office on the 3d day of June, 1922, upon a dismissal of the complaint at the close of the case after a trial at the Kings County Trial Term, in an action to recover damages for injuries alleged to have been sustained through the negligence of defendants.

*George F. Hickey,* for the appellant.

*Thomas J. Brennan* [*Patrick J. McGrath* with him on the brief], for the respondent United States Trucking Corporation.

No appearance or points for respondent Collins.

KELLY, P. J.:

The plaintiff was injured while assisting in loading a case weighing 1,600 pounds from the floor of a dock in Brooklyn to a truck owned by defendant United States Trucking Corporation and in charge of a driver employed by said defendant. Defendant Collins, called as a witness for plaintiff, testified that his office was in the borough of Manhattan; that desiring to move the case he went to the office of the trucking corporation, which was also in Manhattan, and told the representative of the trucking corporation that he wanted some freight moved from the pier in Brooklyn to a pier in Manhattan. He testified that defendant's representative sent for a truck owned by the trucking corporation and operated by a driver in its employ. The driver came to defendant Collins and said: " Dan sent me out to you to get an automobile case," and, " I told him to go ahead over to pier 37 and get it * * * I gave him a delivery order to pick it up." Collins, testifying as plaintiff's witness, said he never saw the automobile case. He had no control over the driver, he did not tell him what route to take and did not hire him or pay him. His bargain with the trucking corporation was to pay them for the truck and they were to transfer the merchandise, keeping control of the truck themselves. On the day in question that was the only job he had. and it would take the greater part of a day to move the case. At the close of the plaintiff's case in chief this was the only evidence concerning defendant Collins' relation to the truck and driver. The plaintiff testified that he was a sailor employed on a steamship lying alongside the pier in Brooklyn and that about noon on the day in question he went off the vessel with two of the crew for the purpose of going to a lunch room on the street outside the pier.

As the plaintiff and his two companions were walking up the dock they saw the truck on the dock with the driver and two other men standing over a case. He testified that the driver said: " Come on, boys, load this case with me. I haven't got help enough here." Plaintiff testified that he and his two companions went to the assistance of the driver. The three of them took hold on one side of the case and the driver and the other two men took hold on the other side. The driver said: " Now, boys, lift; " the case was raised until it was within an inch of the tail of the truck, but plaintiff testifies that it was too heavy for them to lift; that " it kept dragging, pulling the arms out of me, and I never let go, and it pulled right out of my hands, and I knew no more when I was knocked down and the case flattened out on top of me." The two sailors, plaintiff's companions, corroborated him and testified that the request for assistance came from the driver; that they took hold with plaintiff and did their best to lift the case; that it became heavier as they lifted it; that they held on until they couldn't hold it longer. Plaintiff received injuries for which he sought to recover damages from Collins and the defendant trucking corporation. At the close of plaintiff's case in chief the court dismissed the complaint as to defendant Collins upon the ground that there was nothing in the evidence to show that he did more than to hire the truck; that he had no control over the driver or the operator of the truck. I think the learned trial justice was right. On the evidence the defendant trucking corporation was an independent contractor which had agreed to move the case from one pier to the other, selecting its own servant and truck to do the work, and the driver was doing the work of the trucking corporation in moving the case. (*Charles* v. *Barrett,* 233 N. Y. 127; *McNamara* v. *Leipzig,* 227 id. 291.) The judgment dismissing the complaint as to defendant Collins should be affirmed, but as said defendant did not appear or argue the appeal or file points, the affirmance should be without costs.

At the close of the plaintiff's case the learned trial justice denied a motion for nonsuit by the defendant trucking corporation. The driver of the truck, called as a witness by the trucking corporation, testified he saw defendant Collins before he started for the Brooklyn pier and that Collins gave him five dollars to pay for loading the case. He testified that the usual practice was that the driver of a truck after examining the freight to be loaded, hired men to do that work; that there were men about the pier known as " loaders." He testified that ordinarily when he engaged " loaders " and bargained with them as to their charge, he gave them a ticket signed by them and " the man in charge

of the loaders goes to the corporation office and collects that, redeems that for cash." On the day in question the driver testified that he bargained with the loaders, one of them came over and looked at the boxes and they then told him they would load the boxes for four dollars and seventy-five cents. Nothing was said about the number of men that would be required. Four men came down and they put the first case, weighing 5,200 pounds, on the truck, using the windlass. He testified that it was customary for the driver to assist the " loaders." The second case was jacked up in order that it might be lifted. The driver said they could not use the windlass on the second case, because the first case already on the truck was in the way, " and you don't use a winch on 1,600 lbs. * * * You could have used it and then you couldn't because it has to be lifted, the case has got to be lifted, and it can't be lifted by a winch, a winch drags." The driver testified that the loader was the man in charge. He said that on this day instead of giving the loader a ticket to be redeemed at the office of the corporation he paid them with the five dollars received from Collins. None of these " loaders " was called by the defendant trucking corporation, but a driver named Flaherty, also employed by the trucking corporation and who was on the pier with another of defendant's trucks, testified that as he was passing by he observed seven or eight men about the second case, the first case having been placed on the truck, " and one of the loaders asked me if I would give him a hand with it, so I said, ' Sure,' and I gave him a hand with the case, and it turned over."

The driver of the truck involved in the accident denied that he asked the plaintiff to assist in loading the case. He says he never spoke to him; 'that the " loader " with whom he made the agreement to load the cases asked the plaintiff to " give him a lift." He did not remember seeing plaintiff's two companions. He testified that six men — the four loaders, the plaintiff and himself — lifted the case, it toppled over and plaintiff was pinned under it.

This was defendant's case. In rebuttal the plaintiff called a longshoreman who testified without objection that there was " a custom with respect to the number of men used in placing crates upon trucks," and that to lift a case of the dimensions and weight of the case which fell upon the plaintiff would require ten to twelve men. He also testified that there was a usual price paid for assistance and that the driver determined the number of men needed.

On the plaintiff's evidence it would appear that the men engaged in loading the case were emergency employees of the trucking

company. The complaint was dismissed as against defendant Collins, and the appellant (while appealing from the dismissal) confines his prayer for relief in his points to asking that the judgment dismissing the complaint against the *trucking corporation* be reversed.

But assuming that the plaintiff was an emergency employee of the defendant trucking corporation:

1. Was the trucking corporation responsible because the driver undertook to load the case with an insufficient number of men?

2. Was the plaintiff as an emergency employee a fellow-servant of the driver and so liable for his negligence?

3. Was the plaintiff guilty of contributory negligence or did he assume the risk of accident in attempting to load the 1,600-pound case, or in his handling of the case?

The plaintiff, appellant, contends that in employing an emergency servant, the driver stood in place of the trucking corporation, and that the trucking corporation was negligent.

Appellant says that the driver was the *alter ego* of the trucking corporation and was charged with the duty of supplying a sufficient number of men to do the work. In the decision in *Marks* v. *Rochester Railway Co.* (41 App. Div. 66, 71) the court says: " Concededly, in the employment of the plaintiff's son the conductor stood in the place of the master, the defendant. Any contract which he made in that regard was enforcible against the master. If, under those circumstances, the person so representing the master employs an incompetent person, or a less number of persons than is requisite for the performance of the work, or puts the person so employed in an unsafe place, or furnishes him imperfect or unsafe tools or appliances, and injury results because of such failure, the master is liable. (*Bradley* v. *N. Y. C. R. R. Co.*, 62 N. Y. 99; *Flike* v. *B. & A. R. R. Co.*, 53 id. 549.) " Mr. Justice McLENNAN writing for the court (p. 71 *et seq.*) discusses the claim of the plaintiff Marks that the master was liable for *every injury* sustained by the emergency employee on the ground that the relation of fellow-servant did not exist, but he does not agree. He says (p. 73): " In the employment of an emergency man the servant of the master making such employment acts for and stands in the place of the master, and he is charged with all the duties and responsibilities that the master would have been chargeable with if he had made the employment direct. He is charged with the duty of seeing to it that a reasonably safe place is provided for such emergency man to work in. He is charged with the duty of seeing to it that such emergency man is furnished with reasonably safe tools and appliances with which to perform the

work. He is charged with the duty of seeing to it that the other employees with whom such emergency 'man is to work are not incompetent, and to exercise ordinary care and prudence in ascertaining whether they are incompetent or not, and having properly discharged all those duties, when such servant employer' returns to the performance of his duties as servant, he ceases to occupy the relation of master and becomes co-employee as to the person employed by him, and as to every other person in the master's service. If an engineer upon an engine drawing a train upon a railroad discovers that it is necessary to procure a fireman, by reason of the sudden illness of the fireman the master has employed, while so acting he represents the master. Having fully discharged the duty of the master, so far as the employment is concerned, when he commences to operate his engine he ceases to act in the capacity of master, and sustains the relation of co-employee to the fireman whom he employed in the emergency, the same as to the brakemen and to the other employees upon the train. It cannot be of consequence that the employment of an emergency man is continued but a few moments, as in the case at bar, or that the service continues for hours or days. The moment that the employee has completed the hiring of the emergency man, properly discharged the duty of the master in that regard, and resumes his place as servant, and enters upon the performance of his work as such, he ceases to represent the master, and for all purposes is a co-employee, and the master is not liable, even to an emergency employee, for his negligence."

In *Cannon* v. *Fargo* (138 App. Div. 20) this court decided, according to the headnote, that " A person rendering aid to the servant of another at the servant's request under circumstances creating a necessity for help becomes an emergency employee of the servant's master and, if he be injured by the negligence of the servant in some detail of the work, he cannot recover of the master." It will be seen from examination of the opinion in that case (p. 21) that " The negligence claimed consisted of an alleged failure on the part of the messenger to warn the plaintiff of the weight of the package so that he might be ready for it, and the fact that the messenger practically pushed the package out of the car in such manner as to let it fall upon the plaintiff's leg." Apparently the court held that this was a detail of the work. This *Fargo* case was tried four times and on each trial the jury found for the plaintiff, the Appellate Division always reversing the judgment (138 App. Div. 20; 147 id. 51; 158 id. 290; 168 id. 921). On the last trial the plaintiff recovered a verdict, and in reversing we failed to state that it was on the facts, and the Court of Appeals held that as matter of

law plaintiff had a right to go to the jury and got rid of the litigation by reinstating the verdict. (222 N. Y. 321, 331.) But, as pointed out by Mr. Justice McLENNAN in the *Marks Case* (*supra*), there is a distinction between details of performance of the work and the primary obligation of the master as to safe place, safe tools and appliances and sufficient force. Thus in *Lipari* v. *Bush Terminal Co.* (193 App. Div. 309; affd., 233 N. Y. 546) this court held the master responsible to the plaintiff, emergency employee, a boy fourteen years of age, because of failure to instruct or warn plaintiff of the danger incident to the service. We said: " If the principal were present, aside from the inherent danger of the work and the impropriety of engaging a fourteen-year-old boy in such work, he might well be held to the duty of warning or instructing him in some way." It appears that there is the distinction between the fundamental obligation of the master at the outset to supply a reasonably safe method of doing his work, and subsequent negligence of the driver and the emergency employees in the way in which they do the work itself. In the *Lipari* case the master was held liable because the driver of the truck put a boy of fourteen years of age at work at a dangerous task and without instructing him as to the danger. This was a duty imposed upon the master and in executing it the driver was the *alter ego* of the master. This distinguishes the case at bar from *Cannon* v. *Fargo* (*supra*) and *Fiesel* v. *New York Edison Co.* (123 App. Div. 676). (See cases cited in notes to *Maltbie* v. *Belden*, 167 N. Y. 307, in 54 L. R. A. 52 at p. 59 under head " Servants may act in a dual capacity.")

In the case at bar there was evidence that the usual and customary number of men required to handle this case weighing 1,600 pounds was twelve; that six men could not safely lift the case, and that the fall of the case was caused by lack of support in lifting it to the truck.

As to contributory negligence on the part of plaintiff or assumption of risk, I think these questions were for the jury. The plaintiff was a sailor and he testified that he had never done this sort of work before; indeed he says: " I never done a day's work on land since I was born except sailors supplying ward for the government during the war, over in Hoboken."

I think on the evidence an issue was presented to be determined by the jury as to whether the plaintiff was an emergency employee of the defendant trucking corporation, whether the driver undertook to load the case with insufficient help and whether that caused the accident, and whether plaintiff assumed the risk or was himself guilty of contributory negligence.

**640**  MATTER OF VILLAGE OF BROWNVILLE *v.* PUB. SERV. COMM.

Third Department, June, 1924.  [Vol. 209

The judgment dismissing the complaint as to defendant Collins should be affirmed, without costs. The judgment dismissing the complaint as to defendant United States Trucking Corporation, Inc., should be reversed upon the law, and a new trial granted, with costs to appellant to abide the event.

MANNING, KELBY, YOUNG and KAPPER, JJ., concur.

Judgment dismissing the complaint as to defendant Collins unanimously affirmed, without costs. Judgment dismissing the complaint as to defendant United States Trucking Corporation, Inc., reversed upon the law, and a new trial granted, with costs to appellant to abide the event.