ROBERT C. BLOSS, Plaintiff, v. THE PURE OIL COMPANY, Defendant.

Supreme Court, Madison County, January 8, 1929.

*Hammond, Lennox & Martin*, for the plaintiff.
*Melvin & Melvin*, for the defendant.

SENN, J.  The facts are, briefly, these: The plaintiff and one Melvin Diefendorf were copartners conducting a garage at Chittenango.  The defendant, pursuant to a contract with Bloss & Diefendorf, was installing for them on their garage premises a gasoline pump.  The work was in charge of a Mr. Salisbury and one or two assistants.  In laying some pipes to connect the pump with the gasoline tank it was necessary to raise a cement or stone block from the walk on the garage premises.  The block was about five feet in width and of considerable weight, said by one witness to be about half a ton.  Salisbury came into the garage where plaintiff and Diefendorf were and asked them to help raise it, which they did.  The block was left up on edge until the pipes had been laid, after which, at Salisbury's request, plaintiff and Diefendorf assisted Salisbury and Mr. Barr, his assistant, in lowering the block into its original place.  As the block was being lowered it got out of control of the men.  Salisbury shouted a warning to let go, the block was dropped on plaintiff's hand and foot and he suffered the injuries complained of.

The question as to whether the accident was due to negligence on the part of defendant's employees and of plaintiff's freedom from contributory negligence was submitted to the jury.

It is claimed for the defendant that it is not liable for the negligence of Salisbury or his assistants, even though it be assumed that he or they were negligent; that Harrington had no authority to engage the services of the plaintiff, who is, therefore, in the position of a mere volunteer; but if, by reason of an emergency or for any reason, Harrington had such authority, then the plaintiff became an employee, and was subject to the fellow-servant rule, as held in *Gunderson* v. *Eastern Brewing Co.* (71 Misc. 519), a case where the driver of defendant's wagon requested a boy of fourteen years to get on the wagon to show him the way.  The court held that he was on the wagon, either in pursuit of a gratuitous ride to please his own fancy, or for the purpose of assisting the driver in his work, in which case he would be a fellow-servant and, if injured through the driver's negligence, could not recover.  The learned justice quoted from Labatt on Master and Servant (Vol. 2 [1st ed.], § 631) as follows: " A person suing for injuries received in the performance of work undertaken by him as a volunteer is placed in this dilemma,— that, if the evidence shows that he was not authorized to perform, as a servant, the work in question, the party for whom the work was done owed him no obligations as a master; while, on the other hand, if his claim to be put on the footing of a servant is admitted, the doctrine of common employment operates as a bar to his recovery.  The latter alternative

arises where the injured person was an emergency assistant hired by an employee who had, under such circumstances, authority to engage him, although ordinarily he was not invested with any such power, or where the services, although voluntarily offered in the first instance, were accepted by the master's agent."

In *Fiesel* v. *New York Edison Co.* (123 App. Div. 676, 679) it was stated that an emergency employee, called on by another employee to assist him for however short a time, became a fellow-servant and subject to the rules of law applicable to the injury of a servant by his fellow-employee. To the same effect are *Mandala* v. *Wells* (212 App. Div. 370, 372); *Bernhardt* v. *American Railway Express Co.* (218 id. 195) and other cases.

Neither is this doctrine disaffirmed in *Lipari* v. *Bush Terminal Co.* (193 App. Div. 309; affd., 233 N. Y. 546) where a verdict for plaintiff, an emergency helper, was upheld largely on the ground that the plaintiff was a boy of fourteen years and it was a question as to whether, on account of his youth, he should have been warned as to the danger. However, that was not the only ground for the decision, for the court said: " Upon the facts as found by the jury, the act of the driver in employing the boy to assist in unloading this heavy case of merchandise was the act of the defendant." This was at least an intimation that in sending out its wagon loaded in the way it was without sufficient help, the defendant was chargeable with having created the emergency which necessitated calling on plaintiff for help, and that the shortgage of helpers, rather than their negligence, may have been the proximate cause of the injury.

*Geibel* v. *Elwell* (19 App. Div. 285) was another instance where the extreme youth of the plaintiff had much to do with the decision, but in that case the court among other things said: " There certainly was no express hiring, and the mere gratuitous rendering of such a service did not impliedly create, as between the plaintiff and those on the brig, the relation of fellow servants."

The cases which have held the doctrine invoked by the defendant herein have generally been where those rendering the emergency aid were persons who had otherwise no relation to or essential interest in the work being done. Perhaps it was to discourage interlopers (well meaning and otherwise) from acquiring rights which otherwise they could not claim, that this common-law rule was so rigidly applied.

However that may be, I feel that the rule should not apply to the case at bar. The plaintiff and Diefendorf had an interest in the work being done. When the emergency arose which necessitated their help and when requested by defendant's foreman, it was right

and proper that they should respond. Plaintiff's status was more than that of a mere volunteer. By no stretch of the imagination can it be said that he was an employee of the Pure Oil Company. Being properly where he was, it was the duty of the defendant's servants to do their work in such a way as not to negligently injure him.

*Cannon* v. *Fargo* (222 N. Y. 321), although differing in some essentials, appears to sustain the view here taken. Plaintiff was a railway gatetender. The defendant carried on an express business, using for that purpose cars connected with the trains of the railroad company by which plaintiff was employed. On an occasion after he had lowered his gates he was called to assist the express messenger employed by the defendant to unload a package from the train. Through the carelessness of the express agent the package fell on the plaintiff injuring him. There was evidence to justify a jury in finding that under his employment by the railroad company, it was the plaintiff's duty to help the express company's servants in unloading the express baggage. It was argued that in doing this the plaintiff became *ad hoc* the servant of the express company and a fellow-servant of the express messenger, thus precluding a recovery for the latter's negligence.

This contention was not sustained and judgment for the plaintiff was affirmed. The court said: " The application of the *ad hoc* doctrine, as it has been called, is controlled by the facts  *  *  * it may be assumed that it was to the interest of the railroad company to have express matters and baggage transported and delivered for the accommodation of its patrons and the shipping public  *  *  * while such a man  *  *  * might thus incidentally be of assistance and help to the express company and relieve it from some of its work, yet the widest stretch of the *ad hoc* doctrine would never make such an employee a servant of the express company. Such a theory would be so inconsistent with the actual facts as to render the whole doctrine an absurdity.  *  *  * The plaintiff in this case was neither loaned nor hired to the express company, nor was he subject to the direction and orders of the express messenger. The fact that the express messenger called the plaintiff at times and might have given him instructions how to lift out the packages did not change the relationship."

All of which and more that the court said can be applied to the instant case. Bloss, the plaintiff, was in a sense an employee of his firm, its agent and servant. If the master may loan his servant, partly for his own purposes, as in *Cannon* v. *Fargo*, without that servant becoming the servant of the other master, it must follow that the plaintiff, in part furtherance of his own interests,

or that of his firm, could give his own services without becoming a servant or employee of the other party. Therefore he was not a fellow-servant, he was far from being an interloper, he was more than a mere volunteer and he was properly there.

Under the circumstances I believe the case was properly submitted to the jury and the motion to set aside the verdict and for a new trial must be denied.