WILLIAM F. MEYER v. KENYON-ROSING MACHINERY COMPANY.[1]

June 30, 1905.

Nos. 14,331—(108).

**Negligence.**

"One who has an interest in the work to be performed, and for his own convenience, or to facilitate or expedite his own work or that of his employer, assists the servants of another, at their request or with their consent, is not thereby deprived of his right to be protected against the carelessness of the other's servants." 2 Labatt, Master and Servant, § 632.

**Questions for Jury.**

Rule applied, and *held* that plaintiff, who represented himself and the purchasers of a threshing machine engine, was not a mere volunteer in assisting to adjust certain parts thereof at the request of defendant's servant. *Held*, further, whether the servant who made the request was free from negligence in starting up the engine while plaintiff was adjusting a turn buckle, and whether plaintiff was guilty of contributory negligence or assumed the risk, were questions for the jury.

[1] Reported in 104 N. W. 132.

Action in the district court for Hennepin county to recover $5,000 for personal injuries. The case was tried before Willard R. Cray, J., who directed a verdict in favor of defendant upon the close of plaintiff's testimony. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Humphrey Barton,* for appellant.

*G. W. Buffington,* for respondent.

LEWIS, J.

Action to recover damages for injuries to plaintiff's hand, alleged to have been occasioned by one of defendant's servants by turning on the power and starting up the fly wheel of a threshing machine while plaintiff was engaged in adjusting a certain turn-buckle. At the close of plaintiff's case the court, on motion, directed a verdict for defendant.

There is evidence which reasonably tends to support the following facts: Plaintiff and two others were copartners in the threshing business, and purchased a threshing machine from defendant at Minneapolis. The contract of purchase and promissory notes in payment thereof were executed in the name of the two other copartners only. August 5, 1903, the three copartners went to Minneapolis for the purpose of receiving the engine. About 3:30 o'clock in the afternoon the engine was in the street, opposite defendant's warehouse, and defendant's employees were engaged in fitting it up and getting it ready for delivery, and two or three employees at different times worked upon it, but particularly one Peterson. When plaintiff arrived, Peterson asked him if he wanted a job, and plaintiff replied: "I don't know. What is it?" Peterson then told him to clean out the oil holes and grease the front axles, which plaintiff did. Plaintiff testified that he was not requested to do any other particular thing, but that he continued to work on the engine during the rest of the afternoon and until about seven o'clock, when his hand was injured. At six o'clock Peterson went home to supper, and after his return started around the engine for the purpose of final inspection, and when opposite the fly wheel plaintiff called his attention to the fact that the friction needed adjusting, stating that, if Peterson would get a wrench, he would fix it. In response to plaintiff's remark, Peterson said, "Yes, I see," and walked off,

whereupon plaintiff began to adjust the friction by putting his hand through the spokes of the fly wheel for the purpose of getting the turn-buckle in proper position, and while so engaged, Peterson, instead of going after the wrench, walked to the end of the engine and started the fly wheel in motion, causing the injury to plaintiff's hand. The term "friction," used by plaintiff, is the connection between the traction part of the engine and the part used for threshing purposes.

Plaintiff bases his cause of action upon the ground that, if not a part owner of the engine, he was at least interested in the purchase and delivery of it; that he was representing the owners, and, having been invited to assist in getting the engine in readiness for going out that evening, he was not a mere volunteer; that defendant, through its employee Peterson, under the circumstances, was guilty of negligence in turning on the power. The defense advances the propositions that plaintiff was a mere volunteer, and defendant owed him no greater duty than such degree as is required in respect to a trespasser; that defendant was not guilty of negligence under the circumstances; and that plaintiff was guilty of contributory negligence, or assumed the risks.

1. It seems to us the only question meriting particular attention is the relation existing between plaintiff and his copartners in the threshing business and his relation to defendant at the time of the accident. Volunteers, as defined by Labatt (2 Labatt, M. & S. § 631), are those persons who have of their own free will undertaken to do the work of servants, and may fairly be put upon the same footing as servants, and required to bear the burdens to which that position subjects those who occupy it by virtue of a contract of hiring.

In Church v. Chicago, M. & St. P. Ry. Co., 50 Minn. 218, 52 N. W. 647, it was held that a person called in to assist a brakeman temporarily in charge of the switching of a train could not recover upon the ground that he was a volunteer, and the brakeman had no authority to employ additional men for such purpose. In the opinion attention is called to that line of cases which hold that where a person assists the servant of another at his request for the purpose of expediting his own business or that of his master, he is not regarded as a mere volunteer. See also Wagen v. Minneapolis & St. L. Ry. Co., 80 Minn. 92, 82 N. W. 1107.

A case directly in point is Welch v. Maine, 86 Me. 552, 30 Atl. 116, where it was held that the employees of a contractor engaged in taking earth away from the cars for a consignee, who, to facilitate the work, dump the earth from the car on request of the railroad crew, are not volunteers, so as to preclude recovery from the railroad company for injury by the tipping over of a car, due to defects therein and to improper loading. The decision is based upon the proposition that it was done to facilitate the business of their employer, and that such fact did not make them fellow servants.

Another case illustrating the same rule is Street Ry. Co. v. Bolton, 43 Oh. St. 224, 1 N. E. 333, where a passenger was held to be not a volunteer when called upon by the driver of the car to assist in pushing the car back upon the track, and being injured while so engaged by the negligence of the driver of another car. See also Eason v. S. & E. T. R. Co., 65 Tex. 577; Empire v. Brady, 164 Ill. 58, 45 N. E. 486. The authorities are collected and the general principles stated in 2 Labatt, M. & S. §§ 630-632.

The facts in the case before us bring the plaintiff within the doctrine of these decisions. He had a personal interest, as one of the copartners who were to use the machine in their business, to see that it was put in proper shape, and he was there for the express purpose of representing the owners and himself and to take possession. It is not claimed by plaintiff that the relation of master and servant was established. By the language referred to, no contractual relation was effected, but it was a request to assist in getting the engine ready, and under such circumstances plaintiff was no trespasser or volunteer.

2. At the time of the accident the machine was still in defendant's possession. When plaintiff arrived on the scene it stood in the street, ready for the finishing touches. Peterson appeared to be in charge of that work, and his attention was specifically called to the necessity of tightening the locknut that held the turn-buckle in position so as to properly adjust the friction. It cannot be said, as a matter of law, that under such circumstances Peterson was not negligent in turning on the power without informing plaintiff. He knew plaintiff was working on the engine, and that to adjust the friction it was necessary to put the hand in a dangerous place, and should have considered the ef-

fect of his reply to plaintiff's request for a wrench, and of his going off as if to get it. What would plaintiff be likely to assume or do? Besides, Peterson was in a position to see what plaintiff was doing before turning on the power. All these matters were questions for the jury, and it was for them to say whether or not Peterson was guilty of negligence.

3. The same reasoning applies as to the conduct of plaintiff. Having been requested to help, and having busied himself for two or three hours in connection with Peterson, did he not have a right to rely upon him, and to assume that he would act with due care, when he said, "Yes, I see," in response to his request for a wrench? And when Peterson walked off as if to get the tool, there being no one else at that time engaged upon the engine, did he not have a right to assume that it would not be started up? Whether plaintiff was exercising ordinary care, or was guilty of contributory negligence, or assumed the risks in putting his hand between the spokes of the fly wheel without first notifying Peterson, were questions for the jury.

For these reasons the court was not justified in ordering a judgment for defendant.

Order reversed and new trial granted.