JOHN CANNON, Appellant, *v.* JAMES C. FARGO, as President of the AMERICAN EXPRESS COMPANY, Respondent.

**Railroads — master and servant — negligence — injury to gatetender employed by railroad while assisting employee of express company in unloading box from express car — evidence — credibility of party, whose testimony on second trial is different from that on first trial, question for the jury, not for the court — appeal — when statement of reversal by Appellate Division, not sufficient compliance with statute (Code Civ. Pro. § 1328).**

1. Where the plaintiff's testimony on a new trial differs from that given by him on the first trial, and if credited by the jury would entitle him to a verdict, the trial court has no right to treat it as untrue as matter of law and take the case from the jury, but should leave it to the jury to say whether the testimony is entitled to belief.

2. The plaintiff was a gatetender for the New York Central and Hudson River Railroad Company at a public crossing. On the occasion in question, after he had lowered the gates, he was called to assist the express messenger, an employee of the defendant, to unload a package from the train. The package, through the carelessness of the express agent, fell upon the plaintiff causing him serious injury. The plaintiff upon the trial admitted that upon a previous trial he had stated that he was not aware of the fact that it was part of his duty to assist in taking matter from the express cars. He testified, however, "I had seen others do it but I wasn't told to do it when I was hired to do it." *Held, first,* that the evidence presented upon the trial required the submission of the question to the jury regarding plaintiff's duties and his knowledge concerning them; *second,* that plaintiff was neither loaned nor hired to the express company, nor was he subject to the direction and orders of the express messenger. The fact that the express messenger called the plaintiff at times and might have given him instructions how to lift out the packages did not make him the servant of the express company.

3. The statement in the order that the reversal was upon the law and the facts is not a compliance with section 1338 of the Code of Civil Procedure. The order does not state the *particular* question of fact upon which the reversal was made, and a statement of the reasons for reversal in the opinion is not a statement in the order. It must, therefore, be presumed that the judgment was reversed on errors of law only. The evidence required the submission of the case to the jury, and the exceptions present no improper rulings, so that there was no error of law justifying the action of the Appellate Division.

*Cannon* v. *Fargo,* 168 App. Div. 921, reversed.

(Argued December 6, 1917; decided January 15, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 22, 1915, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Morschauser* and *Harry Arnold* for appellant. Plaintiff and the express messenger in the car were not

under control of a common master. There is no evidence that they were. (*Svenson* v. *Atlantic Mail*, 57 N. Y. 108; *Sanford* v. *Standard Oil Co.*, 118 N. Y. 571; *Johnson* v. *Netherlands Am. Nav. Co.*, 132 N. Y. 576; *Murray* v. *Dwight*, 161 N. Y. 301; *Sullivan* v. *Tioga R. R. Co.*, 112 N. Y. 643; *Kane* v. *Mitchell Trans. Co.*, 90 Hun, 65; *Reilly* v. *Atlas Iron Const. Co.*, 83 Hun, 196; *Conlan* v. *N. Y. C. & H. R. R. R. Co.*, 74 Hun, 115; 148 N. Y. 748; *Henry* v. *Stanley Hod Elevator Co.*, 129 App. Div. 613.) The question as to whether a custom of assisting had grown up was properly left to the jury. (*Dwight* v. *Cutting*, 36 N. Y. Supp. 99; *Scott* v. *Brown*, 60 N. Y. Supp. 511; *Walls* v. *Bailey*, 49 N. Y. 464.) The trial court was right in submitting the cause to the jury. From the evidence submitted the jury could properly have found that the plaintiff justifiably believed it to be part of his duty to assist in unloading baggage and express for the defendant. It would have been error for the trial court to have dismissed the complaint or to have directed a verdict in favor of the defendant.

*Frank Hasbrouck* for respondent. The final judgment of the Appellate Division dismissing the plaintiff's complaint was proper and should stand. (*Peterson* v. *Ocean El. Co.*, 214 N. Y. 43; *Bullock* v. *N. Y. C. & H. R. R. R. Co.*, 213 N. Y. 694; *Middletown* v. *Whitridge*, 213 N. Y. 499; *Galley* v. *Brennan*, 216 N. Y. 118.)

CRANE, J. The plaintiff was a gatetender for the New York Central and Hudson River Railroad Company at the public crossing immediately below the station at Staatsburg in Dutchess county. On the thirty-first day of October, 1908, after he had lowered his gates, he was called to assist the express messenger, an employee of the defendant, to unload a package from the train. The package which was being removed weighed 385 pounds, and through the carelessness of the express agent

fell from the car upon the plaintiff causing him serious injury. This negligence of the defendant's agent is not disputed, the only serious question litigated upon this trial being the duty of the plaintiff. Was he a volunteer in assisting the express messenger, or was it part of his duty as an employee of the railroad company to give assistance in unloading the baggage and express packages? The judgment entered upon the verdict of the jury in the plaintiff's favor has been reversed by the Appellate Division and the complaint dismissed for the reason that upon a previous trial the plaintiff had stated that he did not know at the time of doing the work that it was part of his duty to help with the express. In this we think the Appellate Division was in error. The evidence presented upon this trial required the submission of the question to the jury regarding plaintiff's duties and his knowledge concerning them.

The testimony, in substance, was as follows: The plaintiff at the time of the accident was fifty-six years of age and had worked for the New York Central Railroad Company about thirty-nine years as section hand, section foreman, trackwalker and gatetender. On the first day of April, 1908, he went to work as gatetender under the direction and superintendence of Patrick Sheridan, the station agent at Staatsburg. For many years prior to 1908, and ever since the gates were put on the crossing in 1886, the plaintiff had seen other gatemen assist in loading and unloading baggage from the trains. Sheridan and the express company's agent had called the plaintiff several times to take baggage and express out of the express car. Sheridan told him to help unload and load the express car — American Express. This happened as often as twice a day every day in the week with the exception of Sunday. The station agent had frequently helped with the plaintiff to unload the express baggage. It further appears from

the evidence that the station agent, Patrick Sheridan, when called upon the previous trial had testified that it was part of the plaintiff's duty to unload the express baggage.

Upon such evidence as this a jury would have been justified in finding that it was the plaintiff's duty to help the express company's servants in unloading the express baggage, and that he knew at the time of the accident that this was in the line of his employment.

Upon cross-examination the plaintiff did admit that upon a previous trial he had stated that he was not aware of the fact that it was a part of his duty to assist in taking express matter from the express cars, and that nobody of the railroad company had told him that he was expected to help with the express matter.  It may be that his answer to the following question somewhat explains or qualifies the apparent contradiction:  " You didn't know it was your duty to help with the baggage until after the first trial did you — baggage or express? A. Yes I did.  I seen others do it, but I wasn't told to do it when I was hired to do it."  But, conceding that the plaintiff's testimony upon the present trial was irreconcilable with his testimony upon the first trial, yet this bore upon the plaintiff's credibility and did not justify the court in determining when the plaintiff was telling the truth.  Questions of fact are for the jury. " Where the plaintiff's testimony on a new trial differs from that given by him on the first trial, and if credited by the jury would entitle him to a verdict, the trial court has no right to treat it as untrue as matter of law and take the case from the jury, but should leave it to the jury to say whether the testimony is entitled to belief."  (*Williams* v. *Delaware, Lackawanna & Western Railroad Co.,* 155 N. Y. 158.)

The evidence introduced by the plaintiff to the effect that gatemen at the stations along this line of the railroad

were required to assist the expressmen and had done so for years in the line of their duty, may have been incompetent to establish the plaintiff's duty at the Staatsburg station on 'the day of the accident. But, before such evidence was introduced, the defendant had offered in evidence the rules of the railroad company requiring the crossing flagman to be constantly on the lookout for approaching trains, to make every effort to prevent persons crossing the tracks, to keep the gates lowered until the trains has passed, and to ascertain if any other trains were approaching. These rules were offered not only to show the plaintiff's duties but also their limitations. The plaintiff was, therefore, justified. in showing that the rules were honored in their breach, and that with the knowledge, consent and by the express order of the railroad company and its agents, other duties than those prescribed by the written rules were given to flagmen at gate crossings. The defendant cannot claim that written rules are of more virtue than long-established practice. (*Larkin* v. *N. Y. Telephone Co.*, 220. N. Y. 27, 32, 33.)

It has been suggested by some of my associates that the plaintiff, in assisting to remove the express package from the train, was *ad hoc* the servant of the express company and a fellow-servant of the express messenger, thereby preventing any recovery for the latter's negligence under the fellow-servant rule.

The application of the *ad hoc* doctrine, as it has been called, is controlled by the facts. Taking the evidence in this case most favorable to the plaintiff, as we are compelled to do in view of the dismissal of the complaint, we have this situation. The New York Central railroad operated trains over a line upon which Staatsburg was a station. The defendant carried on a general express business using for that purpose cars connected with the trains of the railroad company. It may be assumed

that these trains, according to universal practice, ran on scheduled time, and that it was to the interest of the railroad company to have its trains, as far as possible, adhere to the schedule and arrive and leave on time. Likewise, it may be assumed that it was to the interest of the railroad company to have express matters and baggage transported and delivered for the accommodation of its patrons and the shipping public. In order to facilitate the movement of trains and their speedy dispatch, the railroad company could have employed a man, known or styled as a baggageman, to remove or take out express matter from the express car, or to load express matter upon the car, so that there might be no delay or difficulty in shipment. While such a man, with no other duties to perform, might thus incidentally be of assistance and help to the express company and relieve it from some of its work, yet the widest stretch of the *ad hoc* doctrine would never make such an employee a servant of the express company. Such a theory would be so inconsistent with the actual facts as to render the whole doctrine an absurdity. We would then have the case of a man employed by the railroad company, whose sole duty was to assist with the baggage and the express for the benefit of the railroad company, being at all times and under all circumstances a servant of the express company. Only one step further and we have the case at bar. Economy in running expenses is one of the fundamental principles of good business, and the payroll is an item which must be considered in days of efficiency. This railroad company, therefore, upon a line which was not so busy as to keep a gateman constantly at his post, gave him the additional duty of a baggageman or express helper instead of employing another man for that sole purpose; it employed one man instead of two. Multiplicity of duties is not a fact which should here shake fundamental principles of law. This

plaintiff, as gateman, was given the duty of helping along the express packages and their removal from the trains. The work was given him by the railroad company. It was part of his duties for his employer and for his employer's benefit, and the fact that in doing this work he assisted the express company did not make him the servant of the express company in the doing of it. No authority can be found to sustain such a proposition. Otherwise we would have it as the law that, whenever the master sent his servant in his own interests to do a bit of work which also benefited others, the servant, for the time being, ceased to be his employee.

It is true that the application of the *ad hoc* rule is many times surrounded with difficulty, as has heretofore been stated by this court. Varying facts may at first reading appear to vary the principles of law, but, throughout all the cases upon this subject, there runs a well-defined, underlying rule that the servant of one master to become, for the time being, the servant of another must pass out of the direction and control of the former into that of the latter. He must have been loaned or hired for the time being to the second master for the latter's purpose. The *ad hoc* doctrine is not a mere theory, but such an actual change in facts and relationships as to justify or relieve liability as the case may be. When the servant, therefore, as a fact, becomes the servant of another, subject to his direction and to his control, and working for his benefit, that other assumes the liability of master, and the employee falls into the fellow-servant class.

It is unnecessary to quote the facts from the various cases, or explain distinctions, or show in what way this *ad hoc* doctrine has heretofore been applied by this court. This has been fully done in the cases hereafter cited. Sufficient to say that a reference to them will show a uniform adherence to the above-stated principles.

Beginning with *Hartell* v. *Simonson & Son Co.* (218 N. Y. 345) and running back through *Schmedes* v. *Deffaa* (153 App. Div. 819, reversed on the dissenting opinion of MILLER, J., in 214 N. Y. 675); *Kellogg* v. *Church Charity Foundation of L. I.* (203 N. Y. 191); *Murray* v. *Dwight* (161 N. Y. 301, 310), and *Higgins* v. *W. U. Tel. Co.* (156 N. Y. 75), we find a uniform application of the above principles to many shifting and varying facts. Even the dissenting opinion of Judge GRAY, in *Murray* v. *Dwight,* carried the rule no further than is stated by him in these words: " If I read these cases right, they sustain the doctrine that one who is the servant of the general master may, if employed elsewhere temporarily, *ad hoc,* become the servant of the special master and it is of no consequence whether he is loaned for the purpose, or whether he is hired, not directly, but through his general master. If the particular employment subjects him to the directions and orders of another than his general master, he ceases to be the latter's servant for the time; whose responsibility for his acts, also, ceases."

The plaintiff in this case was neither loaned nor hired to the express company, nor was he subject to the direction and orders of the express messenger. The fact that the express messenger called the plaintiff at times and might have given him instructions how to lift out the packages did not change the relationship. Similar instructions and orders were given in the *Kellogg* case as to the driving of the ambulance.

These cases, and the others cited therein, have been followed by the Appellate Division, and the rule above expressed repeatedly applied. (*Cowell* v. *Saperston,* 149 App. Div. 373; *Hopkin* v. *Empire Engineering Corporation,* 152 App. Div. 570; *Weaver* v. *Jackson,* 153 App. Div. 661; *Vasligato* v. *Yellow Pine Co.,* 158 App. Div. 551; *Hanatsek* v. *Wilson,* 161 App. Div. 634; *McHarg* v. *Adt,* 163 App. Div. 782.)

The law of this case was very well stated upon the first appeal to the Appellate Division by Mr. Justice CARR. (*Cannon* v. *Fargo,* 138 App. Div. 20.) " If," said he, " the plaintiff was engaged in the discharge of his duty to his general master in assisting in unloading the express package in order that the train might haul out of the station without delay, then he was scarcely an emergency employee of the express company in carrying out his general master's purpose. Assuming the fact as proved by the defendant, the plaintiff at the time of the accident was doing the work of the railroad company and, in such, was not a fellow-servant of the express company. The fact that the servants of both companies were engaged in working for a common end does not make them necessarily fellow-servants, for each set of servants were carrying out respectively the shares of their separate masters for the common end." (p. 24.)

The subsequent trials of this case have followed the law as thus stated, and the question litigated has been confined to whether or not the plaintiff was charged by the railroad company with the duty of helping the express-man. (*Cannon* v. *Fargo,* 147 App. Div. 51; 158 App. Div. 290.)

This has been the fourth trial of this case and on each trial the jury has found for the plaintiff. The judgments, however, have been reversed by the Appellate Division. It may be as stated in *Ridgely* v. *Taylor & Co.* (126 App. Div. 303) that there comes a time when the verdict of the jury upon disputed testimony should stand. However this may be, the Appellate Division in reversing this, the fourth judgment for the plaintiff, could have granted a new trial, but instead it dismissed the complaint. The order of reversal, dated November 27th, 1914, states that the judgment and order appealed from are reversed on questions of fact and of law, and a final judgment is directed dismissing the complaint. The

order of April 16th, 1915, entered upon a re-argument of the case, states that the judgment and order appealed from be reversed and the complaint dismissed. Neither of these orders constitutes a reversal upon the facts. The statement that the reversal was upon the law and the facts is not a compliance with section 1338 of the Code of Civil Procedure, which reads: " Upon an appeal to the Court of Appeals from a judgment, reversing a judgment * * * entered upon the verdict of a jury * * * it must be conclusively presumed that the judgment was not reversed, * * * upon a question of fact, unless the *particular* question or questions of fact upon which the reversal was made * * * are specified and referred to by number or other adequate designation in the body of the judgment or order appealed from."

The order of the Appellate Division does not state the particular question of fact upon which the reversal was made. A statement of the reasons for reversal in the opinion is not a statement in the order. We must, therefore, presume that the judgment was reversed on errors of law only. (*Larkin* v. *N. Y. Tel. Co., supra; Hearst* v. *N. Y. C. & H. R. R. R. Co.*, 215 N. Y. 268.)

As already stated, the evidence required the submission of the case to the jury, and the exceptions present no improper rulings, so that there was no error of law justifying the action of the Appellate Division.

We, therefore, are obliged to reverse the judgment of the Appellate Division and affirm that of the trial court, with costs to the appellant in this court and in the Appellate Division.

HISCOCK, Ch. J., HOGAN and POUND, JJ., concur; COLLIN and McLAUGHLIN, JJ., dissent; CHASE, J., taking no part.

Judgment reversed, etc.