MARIE L. SHEA, as Administratrix, etc., of CHRISTOPHER A. SHEA, Deceased, Appellant, v. UNITED STATES TRUCKING CORPORATION, ·Defendant, Impleaded with JAMES REARDON, Respondent.

First Department, April 21, 1922.

**New trial — grounds — belief of trial justice that witness testified falsely not ground for setting aside verdict where verdict is sustained by other evidence — function of jury to determine credibility and weight to be given to testimony.**

A verdict for the plaintiff should not be set aside by the trial justice and a new trial granted on the ground that he believes that one of plaintiff's witnesses testified falsely upon the trial and that a former statement made by the witness that he did not see the accident in question was true, where, if the testimony of such witness is excluded, the testimony of plaintiff's other witnesses is sufficient to sustain the verdict.

The credibility and weight to be given to the testimony of a witness is to be determined by the jury, and not by the court, subject to the power of the court to set aside the verdict as against the weight of the evidence.

CLARKE, P. J., dissents, with memorandum.

APPEAL by the plaintiff, Marie L. Shea, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 29th day of July, 1921, setting aside the verdict of a jury for $12,500 in favor of the plaintiff and granting a new trial.

*Keron F. Dwyer* of counsel, for the appellant.

*John R. Fitzpatrick* [*Don Carlos Buell* of counsel], for the respondent.

PAGE, J.:

This is a statutory action, pursuant to section 1902 *et seq.* of the Code of Civil Procedure,* to recover pecuniary damages for the negligent causing of the death of the plaintiff's intestate, Christopher Shea.

The undisputed facts of the case are that the plaintiff's intestate, at about ten o'clock P. M., was struck by the defendant's automobile, a little south of the southeast corner of Broadway and Wall street; that the car passed over his body and went on the sidewalk and struck the lamp or signpost and stopped; that the body of the deceased was lying with the feet on the sidewalk and his body in the street.

The conflicting testimony relates to the movements of the plain-

---

* Now Decedent Estate Law, § 130 et seq., as added by Laws of 1920, chap. 919.— [REP.

tiff's intestate immediately before the accident happened, the speed of the car, whether when the car struck the post the windshield was broken, and whether there was a south-bound trolley car near the scene of the accident, as well as a north-bound one.

The plaintiff's witnesses testified that Shea was standing near the uptown trolley track on which a north-bound car was approaching about a block away; that the defendant's automobile passed the trolley car at rapid speed, and Shea walked back toward the sidewalk and had almost reached it; that the chauffeur had turned the automobile also toward the sidewalk, and ran Shea down; that the automobile went on the sidewalk and struck the signpost, breaking the glass in the windshield. The defendant's witness testified that Shea walked out to the middle of the street, turned around and walked back to the sidewalk, waited there a while, and when the automobile was only about ten feet distant stepped off the sidewalk, the chauffeur swerved the automobile toward the sidewalk to avoid hitting him, but nevertheless struck him; that the automobile ran on the sidewalk and struck the signpost, but the windshield was not broken; that the automobile was going slowly at the rate of eight or ten miles an hour. The plaintiff had called as witnesses two motormen. One, Fuller, testified that he was operating a south-bound car, and that, when the accident happened, he was at about Pine street. The defendant testified that there was no trolley car coming south at that time. Fuller testified circumstantially as to the happening of the accident. The other motorman, Faughnan, who was operating the north-bound car, which all the defendant's witnesses testify they passed, corroborated Fuller's testimony. The defendant testified that he spoke to the motorman of the north-bound car. He did not state that Faughnan was the motorman with whom he talked, although he was called to the stand after Faughnan had testified. The defendant produced an affidavit made by Faughnan for the railroad company, verified four days after the accident occurred, in which he stated: " I was northbound on B'way. When my car was at Rector street I saw something had happened at the south side of Wall street, I ran my car to the south side of Wall street. An automobile was standing with the right front wheel on the west sidewalk and at the southwest corner of the street. A man was lying at the rear of the auto. His feet were on the sidewalk. * * * He was unconscious. I was told the auto had run over him. I did not see the accident happen." Faughnan testified that he made out this report the day after the accident, November tenth; that the paper produced was copied by the accident clerk. The reason he gave for making a false report was that he was close to the accident at the time it happened and he

could not pass by, because, if he passed by, the accident " would be left on " him.

The case was submitted to the jury and they returned a verdict for the plaintiff in the sum of $12,500. The learned justice set aside the verdict on the ground that he believed the witness Faughnan had testified falsely upon the trial, and that the statement made by him was true that he did not see the accident. He predicates his inference on the statement made by Faughnan that the automobile passed his car at about thirty miles an hour, that when he looked into the automobile there were two women in the back seat with whom he started a conversation in reference to the accident, whereas the testimony was that there were three men in the automobile and no women; that, if the automobile had been going fast, it would have broken or bent the post, and the windshield would have been broken. And he stated that the machine was going at a slow rate of speed when it went upon the sidewalk and the collision injured neither the chauffeur nor other occupants of the car; that it did not break the windshield, nor damage the car or the post which the car struck; and that " Where a witness' testimony is positively contradicted by the physical facts, neither the court nor the jury can be permitted to credit it." (*Missouri, K. & T. R. R. Co.* v. *Collier*, 157 Fed. Rep. 347, 353.)

The difficulty with the application of this case to the instant case is that the learned justice assumed certain facts as established, upon which there was a conflict of testimony, and which the jury evidently resolved to the contrary of the justice's statement. To be sure, the defendant's witnesses testified that the car was going at a slow rate of speed, and that the windshield was not broken. But plaintiff's witness testified to the contrary. Fuller said that the automobile was coming up fast, and that the windshield was broken. Cohn testified that he was standing opposite and about half a block from 80 Broadway, where the automobile passed the trolley car; that the automobile at that time was going from eighteen to twenty miles an hour; and that, when it reached the vicinity of Wall street, he heard the crash of glass, and ran up to the scene of the accident; but he said that he did not notice whether the windshield was broken. Mr. and Mrs. Docaigne, who were on the opposite side of Broadway, both testified that their attention was first attracted by a crash. The jury could properly find from this evidence that the car was going at a rapid rate of speed, and that the windshield was broken as a result of the impact of the automobile with the post.

The fact that Faughnan had sworn, previously, that he did not see the accident happen, and then testified circumstantially as to the occurrence, and that his testimony that he saw women in the

automobile, which was contrary to all the other testimony, were facts to be taken into consideration by the jury in weighing the credibility of his testimony. They also could take into consideration that unquestionably he was on the car going north; that the automobile passed him within 150 feet of the place where the accident happened; that his car was also moving north, bringing him nearer to the scene of the accident, so that he was quite close when it happened; that he had a clear and unobstructed view of the scene, and that in its material details his testimony was corroborated by other witnesses. Therefore, the jury were entitled to accept as true his testimony that his prior affidavit was false, and that his testimony as to the facts of the accident was true, especially in so far as he was corroborated by other witnesses.

It is well settled that the credibility and weight to be given to the testimony of a witness is to be determined by the jury, and not by the court, subject of course to the power of the court to set aside the verdict as against the weight of the evidence; and that, although the court may disagree with the jury and reach a different conclusion as to the truthfulness of the testimony given upon the trial, and be assured of the truth of the witness's former affidavit or testimony which was contrary to his present testimony, he cannot invade the province of the jury and pass upon the credibility of the witness, nor set aside the verdict merely because he believes the jury erred in accepting the present testimony as true.

In *Williams* v. *Delaware, Lackawanna & Western R. R. Co.* (155 N. Y. 158) the plaintiff had given evidence from which the Court of Appeals held that he should have been nonsuited, and ordered a new trial. (116 N. Y. 628.) On the second trial the plaintiff substantially changed his testimony, and the justice presiding at the trial, who had also presided at the former trial, granted a nonsuit, and the judgment was affirmed by the General Term. (92 Hun, 219.) The Court of Appeals reversed the judgment and ordered a new trial, saying (p. 161): " The court, believing that the plaintiff had changed his testimony falsely, with a view of avoiding the effect of the decision of this court, concluded to disregard his testimony on this trial, and held that what he testified to on the former trial was true. There can be no doubt but the learned courts below, both at Trial and General Term, were actuated in their course by most praiseworthy motives, fully believing that they were promoting good morals, honesty and justice, but the question is, was their holding in accordance with law? On one of the trials it is quite likely that the plaintiff's testimony was truthfully given, but whether on the first or the second trial was for the jury, not the court, to determine. It is the prov-

ince of the former, not the latter, to weigh the testimony given in the light of all the circumstances surrounding it." And further (p. 162): "In this case the plaintiff gave testimony which, if credited by the jury, would have entitled him to a verdict. The trial judge apparently did not credit it, and it is quite likely that his view of the testimony was the correct one, but the difficulty of the situation is that, under our method of procedure, it was the province of the jury, not the court, to say whether his testimony was entitled to belief." In *People* v. *Chapleau* (121 N. Y. 266, 276) the court said: "The doctrine as to the treatment of testimony which is affected by contradictions and inconsistencies, or by evidence making its falsity manifest and establishing a consciousness in the witness of its falsity, has been much considered in the books. Opinions have not always been in accord, but the weight of authority was in favor of the general rule that the question of the credibility of a witness was one for the jury, and that the only exception to the rule was in cases where the discrepancies in the testimony were the result of deliberate falsehood. [Citations.] But, since the enactment of section 714 of the Penal Code and section 832 of the Code of Civil Procedure,* we must hold that a new rule obtains, and that the rule and policy of the law are to allow all testimony to go to, and be weighed by the jury. By those sections, a person convicted of any crime is, notwithstanding, a competent witness in any cause or proceeding, civil or criminal; but proof of his conviction is allowed for the purpose of affecting the weight of his testimony. In *People* v. *O' Neil* (109 N. Y. 251, 265) the court had refused to charge that if the jury should find that certain witnesses had in their previous testimony, in respect to the same matters, committed willful perjury, the jury should wholly disregard their testimony given on the trial. This was held not to be error, and ANDREWS, J., said, in reference to the force of section 714 of the Penal Code: ' It would be manifestly absurd, in the light of this statute, now to hold that an unconvicted perjurer was an incompetent witness, whose evidence could not be considered by the jury, when, under the statute, if he had been convicted, his evidence must be received and weighed by the jury.' Here the witnesses in testifying to facts, of which upon the preliminary examination they had denied knowledge, or which they had suppressed, may have been moved and deterred, as they swore they were, by motives of fright; and they appear to have been perfectly free from improper instigations, or motives to swear falsely. At any rate, it was for the jury to decide whether they were to be believed or not." (See, also, *Walters* v. *Syracuse R. T.*

---

* Now Penal Law, § 2444, as amd. by Laws of 1909, chap. 240; Civ. Prac. Act, § 350.— [REP.

*R. Co.*, 178 N. Y. 50, 53.) In *Goldberg* v. *Burrows* (185 App. Div. 244) the trial justice set aside the verdict and granted a new trial, because he disagreed with the jury as to the credibility of a witness; this court reversed the order and reinstated the verdict. In *Cannon* v. *Fargo* (222 N. Y. 321, 325) the Appellate Division reversed the judgment entered on the verdict of the jury and dismissed the complaint, for the reason that upon a previous trial he had given testimony contrary to that given on the second trial. (168 App. Div. 921.) The Court of Appeals, following the case of *Williams* v. *Delaware, Lackawanna & Western R. R. Co.* (*supra*), reversed the judgment of the Appellate Division and affirmed that of the trial court.

The verdict was not against the weight of the evidence. If the testimony of Faughnan was excluded, the testimony of the other witnesses for plaintiff was sufficient to sustain the verdict. With his evidence in the case, and believed by the jury to the extent only that it was corroborated by other witnesses, the verdict for the plaintiff was amply supported by the evidence.

The order should, therefore, be reversed, with costs to appellant, the verdict of the jury reinstated and judgment given for the plaintiff thereon, with costs.

LAUGHLIN, DOWLING and MERRELL, JJ., concur; CLARKE, P. J., dissents.

CLARKE, P. J. (dissenting):

The learned trial justice has set aside a verdict for the plaintiff and ordered a new trial. There was conflicting evidence. The credibility of witnesses is in the first instance for the jury. Those matters do not, however, deprive the trial court of the power to set aside a verdict when in his opinion the ends of justice require such action upon his part. In my opinion this court should not reverse and reinstate the verdict unless a very clear case is made out. It seems to me that the record in the case at bar does not warrant a reversal of the order appealed from and I vote to affirm.

Order reversed, with costs, the verdict reinstated and judgment ordered for the plaintiff thereon, with costs.