Vincent James Mandala, Respondent, *v.* James Wells, Doing Business under the Firm Name and Style of Wells Architectural Iron Works Company, Appellant.

First Department, March 20, 1925.

Negligence — action by plaintiff, driver of motor truck, to recover for injuries suffered while he was helping defendant's employees unload truck — plaintiff was employee of truck owner who hired truck to defendant — plaintiff's sole duty was to drive truck — no proof that defendant's employee, who asked plaintiff to help, had authority — no proof of emergency — plaintiff helped in order to expedite work — if emergency existed, defendant is not liable since injury was caused by fellow-servant — plaintiff was not invitee nor licensee — action barred on that theory by fellow-servant doctrine.

The plaintiff, a driver of a motor truck, cannot recover from the defendant for injuries suffered while he was helping defendant's employees unload the truck, where it appears that he was employed by the owner of the truck to drive it; that the owner of the truck hired the truck to the defendant; that plaintiff's sole duty was to drive the truck; that at the request of one of defendant's employees, who was not shown to be a foreman or in possession of any authority to act for the defendant in hiring the plaintiff, he assisted the defendant's employees in unloading the truck, primarily for the purpose of expediting the work and not in an emergency, which was not shown to have existed at the time.

If there was an emergency at the time, the plaintiff cannot recover since the injuries resulted from negligence of employees of the defendant, who, if the plaintiff

were treated as an emergency employee, would have been fellow-employees of the plaintiff.

The plaintiff cannot recover on the theory that he was present on the load, while he was helping to unload it, as an invitee or licensee, and was entitled to a reasonable degree of care on the part of the defendant, for in helping unload, the plaintiff assumed to act as a fellow-servant of the employees of the defendant and thereby assumed the risk of any injury from such fellow-employees. Furthermore, the plaintiff was in no sense a licensee upon the premises.

APPEAL by the defendant, James Wells, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 8th day of February, 1924, upon the verdict of a jury for $4,000, and also from an order entered in said clerk's office on the 6th day of February, 1924, denying defendant's motion for a new trial made upon the minutes.

*James B. Henney* [*Theodore H. Lord* of counsel; *Daniel Miner* with him on the brief], for the appellant.

*Fred P. Harrington* [*Julian J. Raphael* of counsel], for the respondent.

FINCH, J.:

The defendant hired from the Kelly-Springfield Motor Corporation a truck to take a load of material to a building which the defendant was engaged in constructing. The plaintiff is a chauffeur in the employ of the Kelly-Springfield Corporation, and was assigned by it to drive the truck. Plaintiff's duty was merely to drive the truck as directed by the defendant. The defendant's employees loaded the truck and the plaintiff drove it to its destination, where the defendant's employees proceeded to unload it. Plaintiff in his complaint alleges: " That while the said pieces of iron were being unloaded from the said truck as aforesaid, the foreman of the defendant, in charge of the work of unloading the said truck and acting within the scope of his employment, requested the plaintiff to assist in the unloading of the truck as the unloading crew of the defendant was shorthanded, and asked the plaintiff to go upon the truck and hold in an upright position the said girder while the agents, servants or employees of the defendant unloaded the pieces of iron from the said truck, and this the plaintiff proceeded to do, and while so engaged at the request of the foreman of the defendant in charge of the said work in holding up the said girder,   *   *   * the agents, servants or employees of the defendant removed from the said truck certain pieces of iron which were supporting the said girder, in a careless, reckless and dangerous manner so as to cause the said girder to become loosened from its fastenings and to fall over and upon the plaintiff causing him to sustain the injuries hereinafter mentioned."

From the foregoing it would appear that the theory of the complaint was that the plaintiff was employed either by the duly authorized agent of the defendant, or that the plaintiff became an emergency employee of the defendant. There appears, however, to have been neither direct authority in the defendant's servants to employ the plaintiff, nor any necessity from which authority might be implied. The plaintiff testified that upon the arrival of the truck the defendant's foreman said: " You have to give us a hand to unload this iron, because I am short of men; " that plaintiff refused and went to dinner, and when he returned defendant's employees were engaged in removing the iron, and the foreman said: " Why don't you get on and help us unload the iron, so we will get done here? " There was no proof that the man referred to as foreman was in fact such or that he had any authority to hire workmen on behalf of the defendant. The said man was not identified by the plaintiff; plaintiff " guessed " he was the foreman, because he was " the man who came out " and said: " What have you got there? " In this connection plaintiff also testified: " There was other men that was just as important as he was. I don't know."

There is likewise no proof of an emergency which would have justified the defendant's employees in employing additional help.

The proof shows that the plaintiff was asked to help in order that he and the defendant's employees could get through sooner, and that his assistance was not rendered as a matter of necessity, but for the mutual convenience of himself and the defendant's employees. Even if such an exigency existed as to authorize a hiring of the plaintiff to assist in the work, it is well settled that the defendant would not then be liable, because the injuries would have been occasioned by a fellow-servant. As was said in *Fiesel* v. *N. Y. Edison Co.* (123 App. Div. 676): "An emergency employee, called for by another employee to assist him, for however short a time, becomes a fellow-servant, and subject to the rules of law applicable to the injury of a servant by his fellow."

The plaintiff claims, however, and the trial court permitted the jury to find, that the defendant may be held liable upon the theory that the plaintiff was an invitee or licensee upon the truck, and as such was entitled to a reasonable degree of care on the part of the defendant. A complete answer to such a claim, however, is the fact that the plaintiff assumed to act as a fellow-servant of the other employees of the defendant, and thereby assumed the risk of any injury from such fellow-employees. The cases, therefore, relied upon by the plaintiff where an invitee or licensee seeks to recover for an injury occasioned by the employees of another, are

not applicable, since in those cases the person seeking redress has not placed himself or herself in the position of a fellow-servant of said employees.

In the case at bar the plaintiff was in no sense a licensee upon premises under the care and control of the defendant in connection with which it owed a duty to any one. The plaintiff voluntarily associated himself with certain employees of the defendant and engaged in the performance of their work. Incidentally he entered upon his own truck, or the truck of his employers. Even as to this truck, assuming that its control had passed to the defendant, it was shown that the material had been properly loaded upon the truck. The plaintiff was injured, not by any defect in the place due to any breach of duty owing by the defendant, but he was injured by the negligence of fellow-workmen in the manner of performing the work in which he and they were associated. There is less reason, in such a case, for holding the employer liable than there is where by the exigencies of the occasion there is implied authority on the part of an employee to hire another to assist him; yet in the latter case it is well settled that the employer is not liable for injuries occasioned by the negligence of a fellow-servant. (*Fiesel v. N. Y. Edison Co., supra.*)

To sustain a liability against the defendant under the facts of the case at bar would be to hold, in effect, that employees delegated to perform certain work might invite any number of bystanders to assist them, and subject the master to liability for the negligence or incompetence of such volunteers, not selected by the master and without any training or experience in the work to be performed.

The case at bar must not be confused with cases where one, in the course of his business, hires his servant to another under such circumstances that there is not a change of masters, as, for instance, in Murray v. Dwight (161 N. Y. 301), where a truckman sent his employee to deliver goods with instructions to assist the consignee in hoisting the goods from the lower floor of a warehouse to an upper floor, in the course of which work the said employee was injured through the negligence of an employee of the consignee. It was held that the fellow-servant doctrine was not applicable, since the employee of the truckman had not under the circumstances become an employee of the consignee, but continued in his original employment. As was said by O'BRIEN, J. (at p. 305): "The relation of master and servant is often confused with some other relation. The mere fact that one person renders some service to another for compensation, expressed or implied, does not necessarily create the legal relation of master and servant. * * *. The plaintiff beyond all doubt was in the general service of the truckman and

First Department, March, 1925.    [Vol. 212

so was his general servant. In that capacity he represented his master and, hence, was a truckman himself. In the pursuit of that calling he was directed by his master to render special services to the defendant, not in moving goods from the store or warehouse to a place of shipment, but from the lower floor of the warehouse to an upper floor. * * *. In this capacity the plaintiff represented his general master, the truckman, and was all the time his servant, and did not become in any legal sense the servant of the defendant any more than he would if employed to move the goods to a railroad station on the truck, and if not such servant he could not, of course, have become the co-servant of the defendant's regular workmen."

In such a case as last mentioned the employee enters upon the premises and engages in the work upon the invitation and consent of the defendant, and the latter is responsible to him both for the safety of the premises and for the negligence of his regular employees. In this connection the plaintiff, in answer to a question as to whom he was helping, stated, " I couldn't help the Kelly people [his employer]. The Kelly people never told me to give them a hand unloading."

Nor should the case at bar be confused with cases where the servant of one master in an emergency assists the servant of another in the mutual interest of both masters, because in such a case there is implied authority in the defendant's servant to procure his assistance, but he still remains the servant of his original master and does not become a fellow-servant. As was said by Judge CRANE in *Cannon v. Fargo* (222 N. Y. 321, 326), where an employee of a railroad company was injured while assisting an employee of the defendant express company: " The New York Central Railroad operated trains over a line * * *. The defendant carried on a general express business using for that purpose cars connected with the trains of the railroad company. It may be assumed that * * * it was to the interest of the railroad company to have its trains, as far as possible, adhere to the schedule and arrive and leave on time. Likewise, it may be assumed that it was to the interest of the railroad company to have express matters and baggage transported and delivered for the accommodation of its patrons and the shipping public. In order to facilitate the movement of trains and their speedy dispatch, the railroad company could have employed a man * * * to remove or take out express matter * * * so that there might be no delay or difficulty in shipment. While such a man, with no other duties to perform, might thus incidentally be of assistance and help to the express company and relieve it from some of its work, yet the

widest stretch of the *ad hoc* doctrine would never make such an employee a servant of the express company. * * *. Only one step further and we have the case at bar. * * *. This railroad company * * * upon a line which was not so busy as to keep a gateman constantly at his post, gave him the additional duty of a baggageman or express helper instead of employing another man for that sole purpose * * *. It was part of his duties for his employer and for his employer's benefit, and the fact that in doing this work he assisted the express company did not make him the servant of the express company in the doing of it. No authority can be found to sustain such a proposition. Otherwise we would have it as the law that, whenever the master sent his servant in his own interests to do a bit of work which also benefited others, the servant, for the time being, ceased to be his employee."

It follows that the judgment and order appealed from should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, McAVOY and MARTIN, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.