[S. F. No. 11314.   In Bank.—July 18, 1927.]

CHARLES MOSS, Respondent, v. THE CHRONICLE PUBLISHING COMPANY (a Corporation), Defendant and Appellant; CHARLES A. MOWRY, Defendant and Respondent; MARYLAND CASUALTY COM-. PANY, Intervener, Plaintiff.

[1] Master and Servant—Joint Service—Separate Masters.—It is a well-recognized principle that where the servants of two parties are jointly engaged in a work of mutual interest each employee is the servant of his own master and neither of the employees is the servant of the other's master.

[2] Id.—Instructions from One Servant to Another.—The fact that the servant of one master may have taken orders as to details from the servant of another master does not make the former servant the employee of the latter master.

[3] Id.—Loaning of Servant.—While a servant may be loaned by his master to another so that the act done by the servant becomes the act of the master to whom he has been loaned and for the time being the general master is not responsible for his acts, in such a case the original master must resign full control of the servant for the time being; it not being sufficient that the servant is partially under the control of a third person.

[4] Id.—Personal Injuries—Action for Damages—Sufficiency of Evidence.—In this action for damages for personal injuries it was held that the evidence was such as to render it impossible to say as a matter of law that the verdict was unwarranted.

(1) 39 **C. J.**, p. 557, n. 2, p. 558, n. 4, p. 1359, n. 54, 58.   (2) 39 **C. J.**, p. 1275, n. 11.   (3) 39 **C. J.**, p. 1269, n. 50, p. 1270, n. 56, p. 1274, n. 4, p. 1275, n. 7.   (4) 4 **C. J.**, p. 848, n. 36; 38 Cyc., p. 1521, n. 82.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. T. I. Fitzpatrick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

1. Which of two or more persons is master of third, note, 37 L. R. A. 33.

3. Duty and liability of master to employee of another loaned to former, note, 20 Ann. Cas. 442.   See, also, 16 Cal. Jur. 1108; 18 R. C. L. 493.

Percy E. Towne for Appellant.

Sullivan & Sullivan and Theo. J. Roche, Edward I. Barry and William A. Kelly for Respondent.

John Ralph Wilson for Intervener.

Ford, Johnson & Bourquin, *Amici Curiae.*

PRESTON, J.—This is an action by plaintiff for personal injuries received by him in June, 1922. Said injuries were caused by the act of one Robert Miotti and the question of negligence is not an issue on this appeal. Plaintiff alleged a cause of action against each of the defendants, Charles A. Mowry and The Chronicle Publishing Company, a corporation, under the rule of *respondeat superior.* The trial developed into a contest between these two defendants as to whose servant Miotti was in the doing of the act out of which plaintiff's cause of action arose. The jury rendered a verdict in favor of the defendant Mowry and against the defendant Chronicle Publishing Company. The latter has appealed and presents as the sole issue for our determination a question which may be stated thus: Was the evidence sufficient to warrant the jury in finding that Miotti, at the time and place in question and in the doing of the act causing the injury to plaintiff, the servant of appellant and acting within the scope of his employment?

Appellant at the time in question and for many years prior thereto owned, published, and distributed a large metropolitan daily morning newspaper. It is admitted that the distribution of this paper to the various carriers to be delivered over the state and elsewhere was under the jurisdiction and control of one Pirie, a servant of appellant, called the superintendent of the mail-room. To facilitate the daily delivery of papers to the carriers for distribution Mowry and appellant in the year 1919 entered into a written hauling contract which was to be in existence for the period of one year, the essence of which was that Mowry was "to do all of the hauling of newspapers from their Mail Room in the Chronicle Building to ferries, depots or post offices for transportation outside the city of San Francisco, also two loads to Oakland each week. . . . " The contract then

named the compensation and concluded with these clauses: "This agreement to remain in effect for one year from August 10, 1919, at which time I (meaning Mowry) am to have the option of renewing this agreement for two years.

"It is understood that the Chronicle Publishing Company may terminate this agreement at any time should the service rendered not be satisfactory to them. It is also understood that I am to carry adequate compensation, public liability and property damage insurance."

The evidence shows that no additional written contract was ever executed by the parties, but that from time to time the compensation of Mowry was increased. It is also admitted that Pirie had the right to employ and discharge all help in connection with the mail-room department. It is also admitted that on the day in question, and for several years prior thereto, said Robert Miotti was and had been in the general employ of the appellant and under the direction of said Pirie and that his wages were exclusively paid by appellant. It is also admitted that on an average of three nights per week and at times when the issue of said paper was of more than twenty-six pages, pursuant to the direction of said Pirie, said Miotti, between the hours of 10 o'clock P. M. and 5 o'clock A. M. of the same night, had as his exclusive duty the work of assisting Mowry's servant in loading papers at the mail-room; accompanying said truck to the place of discharge and there assisting in unloading said papers in order that they might be delivered on schedule and reach the place of distribution at the time desired by appellant. It was in so unloading certain bundles of papers at the pier that the accident happened which resulted in injury to plaintiff. It is also conceded that Mowry's interest in the transaction ceased when the delivery of the papers had been made at the various points specified by appellant, but appellant's interests did not cease at that time. It was scrupulously solicitous and active in seeing that the papers reached the various carriers on schedule and arrived at the various points at the time they were expected. The object in ordering Miotti to assist Mowry was to insure this prompt dispatch of the papers so that no delay might result in their delivery. The greater the size of the paper, the greater the weight and, the item of time being of the essence, the need

for assistance in order to meet the schedule for delivery was imperative and in reality an emergency.

Appellant, however, strongly insists that Miotti at the time and place in question occupied the status of a general servant loaned to an independent contractor for a specific or special service and that Miotti was, therefore, in the doing of the act causing plaintiff's injury, the servant of Mowry and not its servant.

The fact is that for many years prior to the happening of this accident and before the contract with Mowry appellant had used Miotti for the identical work in which he was engaged on the night of this accident. As pointed out above, it is also true that on the nights in question Miotti performed no other work whatsoever for appellant except the work of assisting the delivery of these papers. It is also true that this service was performed by Miotti upon the orders of Pirie, except in a few cases when Pirie would neglect or forget to issue the order and Mowry or his servant would make a request for Miotti's help. Inasmuch as no additional written contract was ever executed by the parties, the presence of Miotti on the truck and the fact that for three nights each week he was exclusively engaged in aiding the dispatch of this work, coupled with the further fact that Mowry exercised the right to demand a helper on these special nights, in case it was forgotten or neglected by Pirie, would warrant the jury in believing that by the conduct of the parties, if not expressly, they had contracted that appellant should furnish a man to aid in the work, which said work was of interest to both parties. The jury could even have found under the evidence that Miotti was at the time, pursuant to the orders of Pirie, really in charge of the deliveries. Certain it is that appellant was so vitally interested in the dispatch of the work that the jury could have found that appellant's servant and Mowry's servant were at the time of the accident jointly engaged in a work of mutual interest to the parties, and this is true even if it be conceded that Miotti, after being ordered to this service, thereafter took his orders as to the details thereof from the servant of Mowry. [1] It is a well-recognized principle that where the servants of two parties are jointly engaged in a work of mutual interest each employee is the servant of his own master and neither of the employees is the servant of

the other's master. This principle has been stated as follows:

"Servants of separate masters, altho engaged in a common undertaking, are not fellow servants. To constitute that relation, servants must be in the employ of, or controlled by, a common master.

"If, with a view to expediting the business or furthering the interests of his general master, the servant assists the servants of another in their work, he is not the fellow servant of those whom he is assisting, altho, acting under general orders from his employer to assist such servants, he does so at their request." (39 Corpus Juris, sec. 668, pp. 557, 558.)

The case of *Cannon* v. *Fargo*, 222 N. Y. 321, 326 [118 N. E. 796], is in point, as follows: "The New York Central Railroad operated trains over a line. . . . The defendant carried on a general express business using for that purpose cars connected with the trains of the railroad company. It may be assumed that . . . it was to the interest of the railroad company to have its trains, as far as possible, adhere to the schedule and arrive and leave on time. Likewise, it may be assumed that it was to the interest of the railroad company to have express matters and baggage transported and delivered for the accommodation of its patrons and the shipping public. In order to facilitate the movement of trains and their speedy dispatch, the railroad company could have employed a man . . . to remove or take out express matter . . . so that there might be no delay or difficulty in shipment. While such a man, with no other duties to perform, might thus incidentally be of assistance and help to the express company and relieve it from some of its work, yet the widest stretch of the *ad hoc* doctrine would never make such an employee a servant of the express company. . . . Only one step further and we have the case at bar. . . . This railroad company . . . upon a line which was not so busy as to keep a gateman constantly at his post, gave him the additional duty of a baggageman or express helper instead of employing another man for that sole purpose. . . . It was part of his duties for his employer and for his employer's benefit, and the fact that in doing this work he assisted the express company did not make him the servant of the express company in the doing of it. No authority

can be found to sustain such a proposition. Otherwise we would have it as the law that, whenever the master sent his servant in his own interests to do a bit of work which also benefited others, the servant for the time being, ceased to be his employee.''

In the case of *Mandada* v. *Wells*, 212 App. Div. 370, 374 [209 N. Y. Supp. 35, 39], in discussing the question of a servant loaned to another, it was said: ''Nor should the case at bar be confused with cases where the servant of one master in an emergency assists the servant of another in the mutual interest of both masters, because in such a case there is implied authority in the defendant's servant to procure his assistance, but he still remains the servant of his original master and does not become a fellow servant.'' To the same effect see *Welch* v. *Maine Cent. R. Co.*, 86 Me. 552 [25 L. R. A. 658, 30 Atl. 116]; *Sandon* v. *Kendall*, 233 Mass. 292 [123 N. E. 847]; *Sprague* v. *General Electric Co.*, 213 Mass. 375 [Ann. Cas. 1914A, 431, 45 L. R. A. (N. S.) 962, 100 N. E. 628]; *Mayer* v. *Kenyon-Rosing Mach. Co.*, 95 Minn. 329 [104 N. W. 132]. See, also, Labatt's Master and Servant, second edition, volume 1, section 48, page 159, where it is said: ''A servant who is engaged, together with the servants of a third person, in loading or unloading or otherwise handling goods, is regarded as acting in behalf of his own master with respect to whatever he does in the course of the work, unless some specific evidence is produced of his having been temporarily placed under the control of the third person.''

[2] Under the principle announced above the fact that one servant may have taken orders as to details from the servant of the other employer would not affect this rule. ''A servant of one employer does not become the servant of another for whom the work is performed merely because the latter points out the work to the servant, or gives him signals calling the service into activity, or gives him directions as to the details of the work and the manner of doing it.'' (39 Corpus Juris, sec. 1462, p. 1275. See, also, *Quinby Co.* v. *Estey*, 221 Mass. 56 [108 N. E. 908]; *McNamara* v. *Leipzig*, 227 N. Y. 291 [125 N. E. 244]; *Flori* v. *Dolph* (Mo.), 192 S. W. 949.)

[3] Moreover, under the evidence, it may well be doubted whether the jury would have been justified had it found that

the services of Miotti had been loaned to Mowry under such circumstances as to make Miotti the servant of Mowry and not the servant of appellant. It is, of course, well recognized in this state that a servant may be loaned by his master to another so that the act done by the servant becomes the act of the master to whom he has been loaned and for the time being the general master is not responsible for his acts. (*Burns* v. *Jackson,* 59 Cal. App. 662, 668, 669 [211 Pac. 821], hearing in this court denied; 18 R. C. L., sec. 244; *Pruitt* v. *Industrial Acc. Com.,* 189 Cal. 459 [209 Pac. 31].)

In the recent case of *Billig* v. *Southern Pacific Co.,* 189 Cal. 477, 483 [209 Pac. 241, 243], this court stated the governing principle as follows: "In other words, the application of the doctrine of *respondeat superior* in any given case depends upon the power of control which the superior possesses, and which for the protection of third persons he is required to exercise, over the conduct and activities of his subordinates. Consequently the doctrine has application only in cases where the power of control exists, and such power does not exist in a situation where the special employer has no voice in the selection or retention of the negligent subordinate. (*DuPratt* v. *Lick,* 38 Cal. 691; *Higham* v. *Waterman,* 32 R. I. 578 [80 Atl. 178]; *Quinn* v. *Complete Electric Const. Co.,* 46 Fed. 506.)'"

Again, quoting from 39 Corpus Juris, section 1462, page 1275: "To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary co-operation where the work furnished is part of a larger operation."

A familiar illustration of the lack of full control is found in the case of *Chamberlain* v. *Lee,* 148 Tenn. 637 [257 S. W. 415, 417]. There the servant of an independent contractor went to the building of another master to repair the elevator. There the operator of the elevator, the servant of the owners of the building, was told to operate the cage in such way and manner as he might be directed by the servant of the independent contractor. In manipulating the elevator, the latter servant was injured. The owners of the building were held liable upon the ground that, although

their servant was directed to place himself for certain purposes under the control of the independent contractor, nevertheless their control over said servant was not completely resigned, and the cause of action by the employee of the independent contractor against them was sustained, the court saying:

"This does not make out a case of lending a servant. The servant was put under the control of plaintiff for one purpose alone. That is, to move the car up and down as plaintiff desired while the particular job was being done. The elevator car was put under the control of the plaintiff for the time, but it was put under his control along with its attendant, who remained in the service of the defendants. There is nothing to show that plaintiff could have discharged this boy, and put another boy to running the elevator at this time. Plaintiff certainly had no right to use this elevator boy for any purpose in connection with the work other than running the elevator up and down. The plaintiff could not have required the elevator boy to remain on duty for a longer period than his regular hours under his contract with defendants.

"In order to escape responsibility for the negligence of his servant on the theory that the servant has been loaned, the original master must resign full control of the servant for the time being." See, to the same effect, *Flori* v. *Dolph, supra,* and *Billig* v. *Southern Pacific Co., supra,* opinion on rehearing.

[4] It must be borne in mind that the jury had a large latitude in accepting or rejecting the evidence of the witnesses, and particularly that of Miotti. (*Burns* v. *Jackson, supra.*) And when this latitude is allowed the jury, the evidence was such as to render it impossible for us to say as a matter of law that the verdict was unwarranted.

Judgment affirmed.

Curtis, J., Shenk, J., Seawell, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.